## No. 17,151.

COLORADO STATE BOARD OF NURSE EXAMINERS ET AL.
*v.* HOHU.
(268 P. [2d] 401)

Decided March 15, 1954.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. ROBERT S. WHAM, Assistant for plaintiffs in error.

Messrs. DICKERSON, MORRISSEY, ZARLENGO & DWYER, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE Colorado State Board of Nurse Examiners having revoked the registered nurse's license of Miss Hohu, and meeting with a reversal of the order in the district court, seeks a reversal of the judgment.

Miss Hohu, to whom we herein refer as respondent, is a registered nurse, and the record shows her former training and hospital experience, which is in nowise questioned here. On February 28, 1950, respondent was in the employ of the Southwest Memorial Hospital at Cortez, Colorado, and during all of the time since, she had been licensed as a nurse, and until the filing of the charge here involved, no complaint of any kind had ever been filed against her. On May 1, 1950, the director of the Board sent her by registered mail a notice to appear before the Board on June 21, 1950, to show cause why her license to practice professional nursing should not be revoked on cause of unprofessional conduct and gross incompetence, and stating that the specific charge against her was contained in a letter addressed to the Board dated February 29, 1950, from Dr. C. E. Parmley of Cortez, which was in the following language: "On February 28, 1950, I notified Miss Margaret Hohu, an employee of the Southwest Memorial Hospital, Cortez, Colorado, that one of my primipara obstetrical patients was on the way to the hospital. Miss Hohu allowed the patient to set in the waiting room until my arrival an hour later, and then insulted her. After the patient was finally put to bed, Miss Hohu did not check and watch her as closely as required by the rules of the hospital and, in addition, used obscene language. When it was time for the delivery, Miss Hohu did not call me, and the precipitous delivery resulted in a laceration."

In the interim, counsel for respondent and the Board stipulated for the taking of depositions in a fashion similar to such procedure in pending court proceedings; the

depositions of a number of witnesses were taken; and the matter came on for hearing before the Board on June 28, 1950, when respondent and her counsel appeared for the hearing, and only three of the five members of the Board were present. At the conclusion of the hearing the minutes of the meeting on that date shows the following: "Since the entire Board was not present at this meeting it was necessary to take the matter under advisement. It was promised that Mr. Dickerson and Miss Hohu would be notified regarding the decision as soon as possible." On August 3 another meeting of the Board was held in Denver, at which time four of the five member board were present, and the minutes of this meeting show that the four members of the board took up the consideration of respondent's case and determined that respondent was guilty of gross incompetency, unprofessional conduct, and certain habits rendering a nurse unsafe to care for the sick in that she failed to perform her duties, as is required in the general practice of nursing, by failing to call the patient's doctor; the use of improper and profane language whereby the patient suffered mental anguish and embarrassment; by discourteous treatment of the patient; and for these reasons, it was the order of the Board by *unanimous* vote that respondent's license be immediately revoked and her name stricken from the roll of registered nurses. These minutes further disclosed that after some discussion the members of the Board determined that the director be instructed to take the complete record of the testimony to the absent member of the Board, Sister Mary Carolyn, with the request that she read the entire transcript and vote upon it. This was done, and the absent member voted for revocation by verified letter to the Board. This presents the following situation: Only three members of the Board attended the actual hearing when respondent was present; the fourth member, at a second meeting, voting in favor of the revocation; the fifth member voted in favor of the revocation some six

weeks after notice of the revocation was issued by the Board; and on September 26, the Board apparently realized the requirement of the statute, that a revocation could be had only on a unanimous vote of the board, held a meeting, and upon motion of one member of the board, the minutes were made to show that the unanimous vote of the Board in respondent's case was in favor of revocation of her license.

On certiorari to the district court, that court entered its findings, judgment and decree in the following language:

"This matter came before the court on the complaint of Plaintiff in the nature of certiorari directed to the State Board of Nurse Examiners and the individual members thereof. The Board having certified the records of the proceedings to the court and the court having reviewed the record and heard the arguments of counsel and having taken the matter under advisement.

DOTH FIND

"That the record does not support the findings of the State Board; the Board was arbitrary in finding the plaintiff possessed of 'habits rendering the plaintiff unsafe or unfit to care for the sick,' when such was not specified in the charge against her. The conduct of the plaintiff as shown by the record is not such as to come under any of the prohibited acts enumerated in Section 6 of Chapter 114, 1935 Colorado Statutes Annotated.

"It is the further finding of the court that the evidence adduced at the hearing does not support the charge of unprofessional conduct or gross incompetence, as contained in the Notice of Hearing sent to the plaintiff by registered mail on May 1, 1950.

"It is the further finding of the court that the hearing was not conducted according to law, in that a hearing for revocation of a license requires the unanimous consent of the entire Board of Nurse Examiners. The hearing was conducted without the presence of one member of the Board, and the absent member was given a full

transcript of the record and was allowed to vote in absentia. This is in violation of recognized procedure. Even though most of the testimony was by deposition, the fact is that the absent Board member did not have the opportunity to see and hear the plaintiff-respondent to satisfy herself in her own mind as to the credibility of plaintiff's testimony and did not have the opportunity to observe the demeanor of the witness. In addition, if one member can be absent from a hearing on so important a matter, others would be able to do the same, and the procedure could develop into a mail-order process submitted on depositions and affidavits.

"It is the judgment and decree of the court that the Findings and Revocation Order of the State Board of Nurse Examiners entered at their meeting of August 3, 1950, be and the same is hereby set aside and held for naught.

"It is the further order of the court that the original certificate No. 15061 issued to the plaintiff Margaret K. Hohu authorizing her to practice professional nursing in the State of Colorado be permanently reinstated and restored to plaintiff and that her name be included in the roll of registered nurses maintained in the office of the Colorado State Board of Nurse Examiners."

The statute here involved is section 6, chapter 114, '35 C.S.A., and is as follows: "The board shall withhold a license by a three-fifths vote, or may revoke any license issued in pursuance of this chapter by unanimous vote, of said board for gross incompetency, dishonesty, intemperance, immorality, unprofessional conduct, or any habit rendering a nurse unfit or unsafe to care for the sick, after a full and fair investigation of the charges; but before any license shall be revoked the holder thereof shall be entitled to at least thirty days' notice in writing of the charge against him or her, and of the time and place of the hearing of such charge, at which time and place he or she shall be entitled to be heard."

Respondent contends that the revocation order

entered is void because it is not upon the unanimous vote of the Board. The Attorney General, appearing for the Board as plaintiff in error, contends, in substance, that a quorum, or a majority of the Board, so to speak, is all that is necessary to do business, and that a holding otherwise would work great hardship in cases of sickness, absence or inability of some members of the Board to attend a hearing. The statutes creating the Board of Nurse Examiners provides that the Board shall consist of five members; whatever power or authority it has to act is confined to the statutes. The statute, section 6, supra, clearly sets out the procedure and defines the grounds for revocation of a license, and unmistakably means that five members, the full Board, must vote for revocation, since the statute specifically provides that three members may vote to withhold the issuance of a license in the first instance. If due process is to obtain, as it should in these hearings, then obviously it is violated if members of a Board are permitted to vote in a revocation matter when they have not attended the hearing, and the respondent thus is denied the right of a full and fair hearing on the charges presented. Such hearings, involving a valued right of a respondent, cannot be conducted on a correspondence school pattern, therefore the trial court properly held the action of the Board in revoking respondent's license was void and of no effect, because of failure to strictly comply with the statutory requirements.

▮ Counsel for the Board contend that on certiorari the court is limited to determining whether a Board has exceeded its jurisdiction or abused its discretion. That is a correct statement of the general rule, but it does not mean that the courts, after reviewing the entire record must permit Boards to deprive people of valuable rights arbitrarily and without due process of law. The Board in the first instance had the power to determine what constituted "gross incompetency, dishonesty, intemperance, immorality, unprofessional conduct, or any habit

rendering a nurse unfit or unsafe to care for the sick * * *." as defined by the statute. If it abuses that power the court, on certiorari, will reverse its judgment and it is proper for the court to determine whether the evidence shows if respondent is guilty of any of the statutory grounds for revocation. Licenses once issued, as in respondent's case, are not to be revoked for simply violating rules of the Board, or what the Board may determine to be professional ethics, it must be for a breach of the statute, and that is a matter for the courts to determine.

We have reviewed all of the testimony as shown by the depositions and it is unusual to find a record so completely barren of any testimony from any witness to the effect that respondent was incompetent, dishonest, intemperate, immoral, or that she was guilty of unprofessional conduct, or of any habit rendering her unfit or unsafe to care for the sick; beyond all of this, all of the evidence was to the effect that she was qualified, moral and efficient. The only unfavorable status in the entire proceeding was the language used in the director's letter to the Board, and that is not without conflict in the evidence. It seems that on the day in question Dr. Parmley had an obstetrical patient about ready for delivery of a baby. He telephoned the hospital; talked to some person other than respondent; and advised them that he was sending a patient to the hospital immediately and that he would appear soon. The patient, accompanied by her mother, did go to the hospital about 10:30 in the evening and was seated in the lobby or waiting room. This was prior to the time respondent came on duty, acting in the general capacity of superintendent of nurses. Respondent had arrived to go on duty and was in the room used by the nurses in their work and in preparing their reports. The doctor arrived by another entrance, inquired if his patient had come in; was told that she had not; he then looked out the door into the lobby and saw his patient seated there; he said that respondent leaned back in her chair and said, "Well, the goddamned

old fool, if she hasn't sense enough to tell us she is going to have a baby, let her have it right in the lobby."

The doctor testified that she then walked to the reception room door and turned on the lights and inquired, "Is anyone going to have a baby?" She returned and said, "No one out here is going to have a baby." Other witnesses present did not recall hearing the profanity, and it was denied by respondent. If profanity was used it was not a breach of the law, nor could it be classified as unprofessional or dishonorable conduct, especially when not directed to the patient respondent might have had in charge. If it was held to be the rule that profanity is a ground for revoking a license, then there could be a serious depletion in the ranks of all professions.

In the instant case it clearly is established that after the patient was put to bed, respondent gave her the customary attention through the night, while at the same time caring for other patients, since apparently respondent was the only nurse on duty. The doctor made some complaint because respondent did not call him when the patient requested that he be called; however, the record shows, without any dispute, that the patient had a normal delivery, with no serious results following.

We have not detailed the evidence in this case other than to definitely show that when respondent was found guilty of the grave charges of gross incompetency, unprofessional conduct and certain habits rendering a nurse unsafe to care for the sick, such charges are not supported by the evidence, and were not made against her in the first place.

■ Under the strict rule concerning certiorari, we are permitted to determine whether or not the Board abused its discretion. How can we make such determination without considering the testimony and the facts before the Board, together with the charges made? Unless we are free to make such determination from the recorded testimony and facts, there would be no occasion for any review of any acts of a Board with statutory

powers only. Courts are not to be impotent, stand idly by, and allow unrestricted exercise of authority by Boards, not granted by statute, or permit the arbitrary and unjustified exercise of discretion.

The judgment of the trial court was right and therefore is affirmed.