Robert O. LEE, D.D.S., P.C.,
Petitioner-Appellant,

v.

The STATE BOARD OF DENTAL EXAMINERS of the State of Colorado; and Willis V. Kittleman, Jr., D.D.S., O.J. Lucero, D.D.S., Thomas E. Moran, D.M.D., William J. Jagger, D.D.S., Fred D. Greenblatt, D.D.S., Carole Odden, D.H., Shirley Schroeder, D.H., H. Conway Gandy, Esq., the individual members thereof, Respondents-Appellees.

No. 81SA409.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1982.

**840**

Calkins, Kramer, Grimshaw & Harring, Kleh, Himelspach, Berrett & Will, David M. Berrett, Denver, for petitioner-appellant.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William A. Richardson, Asst. Atty. Gen., Regulatory Law Section, Denver, for respondents-appellees.

QUINN, Justice.

Dr. Robert O. Lee appeals from an order of the State Board of Dental Examiners (board) suspending his license to practice dentistry for two weeks due to violations of the Dental Practice Law of Colorado, section 12–35–101, *et seq.,* C.R.S.1973 (1978 Repl.Vol. 5). He contends that several of the evidentiary findings of fact underlying the suspension order lack adequate support in the record. He also claims that even if the findings are supported by adequate evidence, they are nevertheless insufficient as a matter of law to constitute "negligent malpractice," "gross incompetence" or "unprofessional conduct" as those terms are used in section 12–35–118, C.R.S.1973 (1978 Repl.Vol. 5).[1] Finally, Dr. Lee argues that

1. At the time of disciplinary proceedings in this case section 12–35–118(1)(e), C.R.S.1973 (1978 Repl.Vol. 5), included within its terms both "gross incompetence" and "negligent malpractice" as grounds for discipline. The statute has since been amended. Presently subsec-

the definition of "unprofessional conduct" contained in section 12–35–118(2)(s), C.R.S. 1973 (1978 Repl.Vol. 5), is unconstitutionally vague.[2] We hold that there is sufficient evidence to support the challenged evidentiary findings of fact. We also hold that while these findings are sufficient to support the charge of "negligent malpractice," the board improperly determined that Dr. Lee engaged in "gross incompetence" and "unprofessional conduct." In light of this disposition we remand for a reconsideration of the appropriate sanction.

## I.

On January 30, 1978, Mrs. Kathleen Young took her seven-year-old son Adam to Dr. Lee for a routine dental examination. Dr. Lee visually examined and took X-rays of Adam's teeth and observed that the boy had cavities in two primary or "baby" teeth, designated by dental nomenclature as teeth I and S. He informed Mrs. Young of Adam's two cavities, and she scheduled an appointment for treatment on February 21, 1978. At some time prior to treatment Dr. Lee examined the X-rays and concluded that Adam also probably had cavities in two other teeth, L and B. He noted on his file that Mrs. Young should be called and advised of these additional cavities.

At the scheduled appointment on February 21, Dr. Lee decided to excavate the cavities and place a medical base in tooth I and a metal alloy in both teeth I and S. This form of treatment, known as an amalgam restoration, was chosen in place of a pulpectomy.[3] After treating teeth I and S, Dr. Lee advised Mrs. Young to schedule an appointment for Adam in six months for a routine examination. The doctor made no mention of cavities in Adam's other teeth.

In April of 1978, while in California with his family on a vacation, Adam suffered oral pain and swelling. When his condition did not improve, Mrs. Young contacted Dr. Kilgore, a California dentist. After unsuccessfully attempting to relieve an abscess in tooth I, Dr. Kilgore extracted the tooth. When the family returned to Denver, Mrs. Young took Adam to Dr. Philip Walter, who removed tooth S because of extensive decay and root resorption.[4]

Mrs. Young complained to the board which thereafter ordered Dr. Lee to appear and answer the following charges: gross incompetence and negligent malpractice, section 12–35–118(1)(e), C.R.S.1973 (1978 Repl.Vol. 5); immoral, unprofessional, or dishonorable conduct, section 12–35–118(1)(l), C.R.S.1973 (1978 Repl.Vol. 5); willful or repeated use of treatment procedures inconsistent with the demonstrable need of the patient, section 12–35–118(1)(n), C.R.S.1973 (1978 Repl.Vol. 5); engaging in a pattern of dental practice which fails to meet generally accepted standards of dental care, section 12–35–118(1)(p), C.R.S.1973 (1978 Repl.Vol. 5); and unprofessional conduct by abandonment of a patient, section 12–35–118(2)(s), C.R.S.1973 (1978 Repl.Vol. 5). During the hearing conducted before a hearing examiner, Mrs. Young testified to Dr. Lee's failure to inform her of a guarded prognosis in relation to teeth I and S and

tion 12–35–118(1)(e), C.R.S.1973 (1982 Supp.), includes gross incompetence only, while subsection 12–35–118(1)(q), C.R.S.1973 (1982 Supp.), proscribes negligent malpractice. Section 12–35–118(2), C.R.S.1973 (1978 Repl.Vol. 5), lists various acts on the part of a licensed dentist which are declared to be "unprofessional conduct."

2. Dr. Lee's appeal was originally filed in the court of appeals but the case was transferred to this court because of his constitutional challenge to the statutory definition of "unprofessional conduct." Sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973. Our disposition renders it unnecessary to consider whether the statutory definition of "unprofessional conduct" in section 12–35–118(2)(s) is unconstitutionally vague.

3. A pulpectomy entails the removal of the entire pulp of a tooth. *Stedman's Medical Dictionary* 1244 (1962). A pulpotomy, in contrast, involves the removal of only a portion of the pulp, usually the coronal portion. *Id.* at 1245. According to the testimony elicited at the disciplinary hearing, the pulp is the vascular tissue inside the tooth that maintains its vitality.

4. A root resorption occurs when the roots of the tooth dissolve, usually as the result of some pathological process. *See Stedman's Medical Dictionary* 1293 (1962).

his failure to mention any additional cavities in teeth L and B. According to Mrs. Young, the doctor merely stated to her that Adam "should come back for another six month checkup."

Dr. Walter also testified at the disciplinary hearing. He described his treatment of Adam, the treatment previously administered by Dr. Lee, and, in his capacity as an expert witness who had practiced dentistry in the Denver area for a number of years, he testified to the generally accepted community standard of dental care. It was Dr. Walter's opinion that Dr. Lee's action did not comport with this standard. Specifically, Dr. Lee's X-rays of teeth I and S were, in Dr. Walter's view, inadequate diagnostic tools because they failed to depict the periapical areas of the teeth. These areas surround the roots of the teeth and, according to Dr. Walter, must be observed before a proper course of treatment for teeth with deep decay can be determined. Further, it was Dr. Walter's testimony that where there is gross decay present, as in teeth I and S, it is inappropriate to treat the teeth with an amalgam restoration. In fact, Dr. Walter believed that, at least with regard to tooth S, Dr. Lee's treatment actually exacerbated the process of tooth decay. Dr. Walter was also of the opinion that, given Dr. Lee's conservative choice of treatment, the generally accepted standard of care required him to inform Mrs. Young of the extent of decay in teeth I and S and to caution her to notify him of any troublesome symptoms. Finally, Dr. Walter stated that although Dr. Lee's X-ray of tooth B overlapped an adjacent tooth and consequently masked the extent of decay in tooth B, the X-ray did show that tooth B had caries, and that the standard of care in the community required Dr. Lee to notify Mrs. Young of this kind of condition.

Although Dr. Lee testified in his own behalf, he did not specifically recall his treatment of Adam. His testimony consequently was based upon his office records and his general procedures in treating dental patients. He stated that unless there was a serious bacterial invasion into the pulp of the tooth, he ordinarily would employ the more conservative and less expensive treatment of excavating the cavity and filling the tooth with an alloy rather than performing a pulpectomy. When he did elect against a pulpectomy, however, his normal procedure was to inform the patient or the patient's parents that the prognosis was a guarded one. Finally, Dr. Lee offered no reason why he never treated teeth L and B, both of which appeared on the January 30 X-rays to have likely cavities, although his normal procedure, according to his testimony, would have been to advise the patient or his parents of the cavities.

Among the hearing officer's relevant findings of fact were the following:

"On an x-ray of Adam's teeth taken by Dr. Lee on January 30, 1978 . . ., tooth I is inadequately revealed since the root area is not shown at all."

"The standard of dental care in the Denver metropolitan area includes the retaking of x-rays which do not reveal a full tooth, especially when that tooth has caries."

"Dr. Lee did not tell Mrs. Young that his treatment of Adam's teeth I and S was very conservative or that there was a chance of problems."

"The standard of dental care in the Denver metropolitan area includes instruction to custodial parents of the possibility of future problems when the decay in a child's tooth filled by a dentist is large and close to the pu[l]pal chamber."

"The x-rays of Adam's teeth taken by Dr. Lee on January 30, 1978 reveal caries in tooth L and tooth B but Dr. Lee did not tell Mrs. Young to bring Adam back for treatment."

"The standard of dental care in the Denver metropolitan area includes advising custodial parents that a child needs treatment for conditions revealed on x-rays."

"Had Dr. Lee performed a pulpectomy on Adam's teeth I and S in January of 1978, tooth I would not have abcessed and been pulled in April, nor would tooth S have had to be pulled in May of 1978."

The hearing officer concluded that Dr. Lee had committed "negligent malpractice and gross incompetence" in violation of section 12–35–118(1)(e) because of his failure to retake the X-ray of tooth I so that all of the tooth would be visible prior to Adam's treatment, his failure to advise Mrs. Young that Adam might have trouble with teeth S and I, his failure to advise Mrs. Young that Adam had cavities in teeth L and B, and his failure to perform or offer to perform a pulpectomy on Adam's teeth I and S. The hearing officer ruled, however, that the evidence was insufficient to establish the other allegations of professional misconduct. The recommendation of the hearing officer was a two week suspension of Dr. Lee's license, plus two years probation conditional on the doctor's taking educational courses in dental practice.

Dr. Lee petitioned the board to review the initial decision of the hearing officer. *See* section 24–4–105(15)(a), C.R.S.1973 (1982 Repl.Vol. 10). The board adopted the hearing officer's findings of fact and concluded that the acts of misconduct relied on by the hearing officer constituted not only "negligent malpractice" and "gross incompetence" in violation of section 12–35–118(1)(e), but also "unprofessional conduct" as proscribed by section 12–35–118(2)(s). The board imposed a suspension period of thirty days, suspended execution of all but two weeks of the thirty day period, and placed Dr. Lee on probation for two years with directions to complete courses in continued dental education and dental record keeping. This appeal followed.

## II.

We first address Dr. Lee's contention that some of the hearing officer's factual findings, which were adopted by the board, lack sufficient evidentiary support in the record. The challenged findings are ones of evidentiary fact, that is, they are the detailed factual or historical findings upon which the legal determination of the board rests. *E.g., Womack v. Industrial Commission,* 168 Colo. 364, 451 P.2d 761 (1969); *see also* 2 K. Davis, *Administrative Law Treatise* § 16.06 (1958). Evidentiary findings of an administrative agency may be set aside only if they are clearly erroneous on the whole record or are unsupported by substantial evidence when the record is considered as a whole. Section 24–4–106(7), C.R.S.1973 (1982 Repl.Vol. 10); *see, e.g., Lassner v. Civil Service Commission,* 177 Colo. 257, 493 P.2d 1087 (1972). Contrary to Dr. Lee's claim, we are satisfied that the challenged factual findings, when considered in light of the whole record, are not clearly erroneous and are supported by substantial evidence.

The first finding challenged by Dr. Lee reads as follows: "The standard of dental care in the Denver metropolitan area includes the retaking of x-rays which do not reveal a full tooth, especially when that tooth has caries." Dr. Walter clearly testified that, pursuant to the "standard of care that I perceive in the community at large," an X-ray showing the periapical area of the tooth must be taken prior to attempting to treat a tooth with the extensive decay present in Adam's tooth I. The X-ray taken by Dr. Lee did not comport with this standard because, according to Dr. Walter, it failed to show any of the periapical area of tooth I. While, as Dr. Lee argues, other parts of Dr. Walter's testimony indicated that it was sometimes a matter of individual choice whether to take an X-ray in particular circumstances, his testimony as to the failure of Dr. Lee's X-ray of tooth I to comport with the local generally accepted standard of care was unequivocal. Under these circumstances, we do not believe that the challenged finding is clearly erroneous or lacks substantial support in the record as a whole.

Dr. Lee also attacks the findings relating to his failure to inform Mrs. Young that the extent of decay in teeth I and S might be a source of future problems and his failure to inform Mrs. Young that her son had cavities in teeth L and B. Dr. Lee argues that his testimony outlining his general treatment procedures was not given sufficient weight by the hearing officer. It was the prerogative of the hearing officer, however,

to accord the greater weight to the testimony of Mrs. Young, as the hearing officer obviously did.[5] According to Mrs. Young, Dr. Lee merely told her to schedule her son for his next semi-annual examination, without mentioning any details whatever of his treatment or other problems regarding her son's teeth. A mere conflict in the evidence, as here present, does not render evidentiary findings clearly erroneous or without substantial support in the record.

### III.

We now turn to Dr. Lee's argument that the findings, regardless of their evidentiary support, are insufficient as a matter of law to support the board's conclusions that Dr. Lee committed "negligent malpractice," "gross incompetence" and "unprofessional conduct" within the meaning of section 12–35–118, C.R.S.1973 (1978 Repl. Vol. 5). The board's determinations were stated in terms of Dr. Lee's actions and their relationship to the controlling legal standards, and thus were findings of ultimate fact. Findings of ultimate fact, as distinguished from raw evidentiary fact, involve a conclusion of law, or at least a determination of a mixed question of law and fact, and settle the rights and liabilities of the parties. *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981); *Womack v. Industrial Commission, supra; see* 2 *K. Davis, Administrative Law Treatise* § 16.06 (1958). An ultimate finding of fact will be set aside by a reviewing court only if, assuming there is evidence to support the finding, it is "contrary to law," section 24–4–106(7), C.R.S.1973 (1982 Repl.Vol. 10); stated conversely, an ultimate finding of fact will be sustained if it has a reasonable basis in law. *Ricci v. Davis*, 627 P.2d at 1118–1119. In our opinion the board's determination that Dr. Lee's actions constituted negligent malpractice has a reasonable basis in law. We find no such basis, however, for the board's conclusion that these same actions also constituted "gross incompetence" and "unprofessional conduct."

### A.

The phrase "negligent malpractice," although not specifically defined by the Dental Practice Law, has a commonly accepted meaning based upon long-standing usage. *See generally Artist v. Butterweck*, 162 Colo. 365, 426 P.2d 559 (1967); *McKay v. State Board of Medical Examiners*, 103 Colo. 305, 86 P.2d 232 (1938); *Brown v. Hughes*, 94 Colo. 295, 30 P.2d 259 (1934). In the case of dentistry the phrase "negligent malpractice" means the failure of a dentist to exercise that degree of knowledge, skill and care used by other dentists engaging in the same type of practice in the same or a similar community. *Id.*

In this case the board's ultimate finding ascribes to Dr. Lee the following four actions which, in the board's view, constituted negligent malpractice: the failure to retake the X-ray of tooth I, the failure to inform Mrs. Young of a guarded prognosis with respect to teeth I and S, the failure to advise Mrs. Young that her son had a cavity in tooth B, and the failure to perform or to offer to perform a pulpectomy on teeth I and S. With regard to the first three actions underlying the board's conclusion, there is nothing in the record showing that it based its decision upon an erroneous standard of negligent malpractice or upon a misapplication of that standard to the facts of the case. On the contrary, the board's decision is simply the result of an appropriate application of a legal standard to the particular facts before it.

As to the final underlying action—Dr. Lee's failure to perform or to offer to perform a pulpectomy on Adam's teeth I and S—we believe that the board's conclusion lacks a reasonable basis in law. A determination of negligent malpractice based upon the failure to select or offer a particular course of treatment must be supported by expert testimony establishing that the omitted procedure was the established method,

---

5. The hearing officer stated: "Little weight was given to Dr. Lee's testimony, not only because he has no memory of what actually took place, but because his records are very sketchy and he is the party in interest in this matter." ·

under the community standard of care, for treating such a condition. *See, e.g., Mallett v. Pirkey,* 171 Colo. 271, 466 P.2d 466 (1970); *McKay v. State Board of Medical Examiners, supra; Jackson v. Burnham,* 20 Colo. 532, 39 P. 577 (1895). In this case there is no finding that the community's generally accepted standard of care required Dr. Lee to perform a pulpectomy, nor would the evidence in the record support such a finding. Dr. Walter, although characterizing Dr. Lee's choice of treatment as inappropriate, did not testify that a pulpectomy was the only established method of treating the condition manifested in teeth I and S. Consequently, the board's conclusion that Dr. Lee committed negligent malpractice in failing to perform a pulpectomy or in failing to offer a pulpectomy must be set aside. The record, however, indicates that each of Dr. Lee's four actions was viewed by the board as a separate and independent basis for the board's determination of negligent malpractice. Because the other three actions of Dr. Lee provide ample support for the board's ultimate finding of negligent malpractice, we do not reverse the board's decision on this aspect of the case.

## B.

Although section 12–35–118(1)(e), C.R.S. 1973 (1978 Repl.Vol. 5), authorizes the board to suspend a dentist's license for "gross incompetence or negligent malpractice," the board here concluded that Dr. Lee's actions constituted both of the alternatives. We believe that this determination cannot be sustained under the record before us.

■ "Incompetence" refers to a demonstrated lack of ability to perform a required duty. *See Ambassador Building Corporation v. Board of Review,* 623 P.2d 79 (Colo. App.1980); *Hatfield v. New Mexico State Board of Registration,* 60 N.M. 242, 290 P.2d 1077 (1955). "Gross" means "[o]ut of all measure; beyond allowance; not to be excused; flagrant, shameful; as, a *gross* derelition of duty; a *gross* injustice; *gross* carelessness." *State Board of Dental Examiners v. Savelle,* 90 Colo. 177, 186, 8 P.2d 693, 696 (1932), *appeal dismissed,* 287 U.S.

562, 53 S.Ct. 5, 77 L.Ed. 496 (1932). In our opinion the term "gross incompetence," at least in the context of dentistry, connotes such an extreme deficiency on the part of a dentist in the basic knowledge and skill necessary to dental diagnosis and treatment that one may reasonably question his ability to practice dentistry at the threshold level of professional competence. *See generally Yoshizawa v. Hewitt,* 52 F.2d 411 (9th Cir. 1931); *Colorado State Board of Nurse Examiners v. Hohu,* 129 Colo. 195, 268 P.2d 401 (1954); *Franz v. Board of Medical Quality Assurance,* 31 Cal.3d 124, 642 P.2d 792, 181 Cal.Rptr. 732 (1982); *New Jersey State Board of Optometrists v. Nemitz,* 21 N.J. Super. 18, 90 A.2d 740 (1952); *Stacey v. Board of Accountancy,* 26 Or.App. 541, 553 P.2d 1074 (1976).

■ The record in this case is lacking in the quantum of evidence necessary to support a reasonable inference that Dr. Lee was "grossly incompetent." The actions upon which the board based its finding of negligent malpractice consisted of Dr. Lee's failure to retake a faulty X-ray, his failure to inform Mrs. Young of likely cavities in Adam's teeth L and B, and his failure to advise her of the guarded prognosis and possibility of future problems in teeth I and S. The only additional conduct disclosed by the record which the board conceivably could have considered in relation to the charge of "gross incompetence" was Dr. Lee's selection of what Dr. Walter characterized as an inappropriate method of treatment for teeth I and S. The overall conduct of Dr. Lee, although being sufficiently unsuitable in several particulars to constitute cause for discipline under the "negligent malpractice" standard, does not manifest, in our view, the extreme lack of basic skills essential to a finding of "gross incompetence." In the absence of some additional evidence demonstrating that Dr. Lee's conduct in his treatment of Adam was only one of many instances of similar conduct, or that his treatment represents a standard of practice which is so *grossly* deviant from the accepted standard of dental care as to be beyond all bounds of professional toler-

ance, we believe that the board's determination of "gross incompetence" could only have been based upon the misconception that this ground for discipline was the substantial equivalent of "negligent malpractice." Given the state of the record before us, we conclude that the board's ultimate finding of gross incompetence lacks a reasonable basis in law, and we therefore reverse that determination.

### C.

We next address Dr. Lee's claim that the board erred in determining that his actions constituted "unprofessional conduct" within the meaning of section 12–35–118(2)(s). Although the hearing officer determined that the charge of "unprofessional conduct" had not been proven, the board concluded that the same predicate findings supporting the charge of "negligent malpractice" also constituted "unprofessional conduct." We are satisfied that the board's determination in this respect was based upon an erroneous interpretation of section 12–35–118(2)(s).

Section 12–35–118(2)(s) defines "unprofessional conduct" to specifically include the following: "[t]he abandonment of a patient by failure to provide reasonably necessary referral of the patient to other licensed dentists or licensed health care professionals for consultation or treatment which fails to meet generally accepted standards of dental care." In reaching its conclusion the board must have interpreted this section to proscribe two separate courses of conduct, each of which constitutes a form of abandonment, namely: (1) the abandonment of a patient by failure to refer, and (2) the abandonment of a patient by administration of treatment that fails to meet generally accepted standards of dental care. In our opinion, however, the final clause in this subsection, i.e., "which fails to meet generally accepted standards of dental care," qualifies the phrase "the failure to provide reasonably necessary referral." Thus, it is the "failure to provide reasonably necessary referral ... which fails to meet generally accepted standards of dental care" that constitutes abandonment of a patient and

cause of discipline under the statutory proscription.

■ The board's construction of abandonment to include dental treatment that fails to meet generally accepted standards of care renders this subsection duplicative of section 12–35–118(1)(e), which lists "negligent malpractice" as a separate basis for professional discipline. Such a rendition causes the negligent malpractice proscription in section 12–13–118(1)(e) to be utterly superfluous, a result surely not intended by the legislature. Perhaps more significant, the board's construction grafts on the word "abandonment" a meaning totally foreign to its obvious intendment. In the context of section 12–35–118(2)(s) abandonment connotes an unjustified renunciation by the dentist of his professional relationship with the patient and a repudiation of his responsibility for the patient's condition. This type of conduct generally involves a higher degree of culpability than the failure to use reasonable care associated with substandard treatment.

■ It follows from our construction of section 12–35–118(2)(s) that the board erred in determining that Dr. Lee's actions constituted "unprofessional conduct." It was undisputed that Dr. Lee sought to continue his professional relationship with his patient and advised Mrs. Young to schedule a routine examination for her son in six months. Further, the record is devoid of any evidence establishing that, under the circumstances of this case, the generally accepted standard of dental care required Dr. Lee to refer his patient to another dentist or health care professional for consultation or treatment.

What the record establishes in this case is "negligent malpractice" in treatment, not "unprofessional conduct" by reason of abandonment. We therefore reverse the board's decision with respect to the charge of unprofessional conduct in violation of section 12–35–118(2)(s). This disposition renders it unnecessary to consider Dr. Lee's constitutional challenge to the statutory definition of unprofessional conduct in section 12–35–118(2)(s), C.R.S.1973 (1978 Repl.Vol. 5). *See*

*Ricci v. Davis, supra.* Because our decision disapproves several of the bases underlying the board's action, we believe it appropriate to remand the case to the board for a reconsideration of sanctions.

The decision of the board is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the views expressed herein.