**Shirley G. HUGHES, Carolyn Curry, and Ann Reeverts, Complainants–Appellees,**

**and**

**State Personnel Board, Appellee,**

v.

**DEPARTMENT OF HIGHER EDUCATION, University of Colorado at Colorado Springs, Respondent–Appellant.**

**No. 95CA1348.**

Colorado Court of Appeals, Div. V.

Feb. 6, 1997.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.)

892

Gregson & Pixler, P.C., Ronald E. Gregson, Hugh S. Pixler, Denver, for Complainants–Appellees.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, G. Charles Robertson, Assistant Attorney General, Denver, for Appellee.

Joanne M. McDevitt, Stephen Zweck–Bronner, Simon P. Lipstein, Denver, for Respondent–Appellant.

Opinion by Judge ROY.

Respondent, the Department of Higher Education (the Department) of the University of Colorado at Colorado Springs (the University), appeals an order of the State Personnel Board (the Board) which affirmed an order of the Administrative Law Judge (ALJ) in favor of complainants, Shirley G. Hughes, Carolyn Curry, and Ann Reeverts. In her decision, the ALJ determined that the University's act of abolishing Hughes' position, which impacted Curry's and Reeverts' positions, was arbitrary and capricious. The ALJ ordered the University to reinstate complainants to the positions they held prior to the University's actions and awarded them back pay and benefits. We conclude that the University's actions were neither arbitrary nor capricious and therefore reverse.

The events at issue arose from the University's reorganization in 1994, prior to which complainants were all classified state employees. Hughes was employed as an Administrative Program Specialist II and had worked for 15 years as the Director of Auxiliary Services in the Department of Administrative Services. Curry and Reeverts each held a position in the College of Business, their job classification being Administrative Program Specialist I.

The reorganization occurred in response to a substantial budget shortfall, occasioned by faculty salary increases ordered by the Board of Regents, the governing board of the University. Pursuant to a directive of the Board of Regents, the Chancellor, the chief administrative officer of the University, formed a budget committee as a standing committee of the University.

The budget committee's assignment was broad. It was asked to examine every aspect of the University's budget and consider the deliberations and actions of the Mission Work Group, the Academic Program Quality and Priorities Task Force, the Board of Regents, the President of the University, and the Chancellor. It was directed to identify $600,000 in savings for the 1994–95 fiscal year to cover the immediate budget shortfall and another $600,000 to create and fund an "Opportunity Fund" to permit future modifications to the University's structure and mission. After several months of study and upon receipt of information from all of the administrative officers, the budget committee forwarded to the Chancellor recommendations for over $1,250,000 in cost-savings.

In June 1994, the Chancellor issued a memorandum regarding the University's plan for reorganizing, reducing, and restructuring. The impact of the plan was, *inter alia*, to reallocate some positions; to abolish 21 positions, one of which was occupied by Hughes; and to promote two senior administrators with commensurate increases in salary.

Hughes was notified in writing that her position had been abolished and of her retention rights. She exercised her retention rights and "bumped" into Curry's position. Upon notice of her displacement, Curry "bumped" into Reeverts' position and, because there was no position into which she could "bump," Reeverts was laid off and her name placed on a re-employment list. Complainants did not challenge the procedure by which retention rights were exercised.

Both Curry and Reeverts were valued employees in the School of Business, performing specialized duties. The dean of business, who had only recently arrived on campus, expressed considerable chagrin at the displacement or loss of these employees.

The three employees impacted by the elimination of Hughes' position sought administrative review on grounds that the reorganization, reduction, and restructuring of positions had been accomplished in a discriminatory (sex and age) manner and were arbitrary and capricious. The Department and University moved to dismiss Hughes' complaint and to limit the issues. These motions were denied and the matter proceeded to an evidentiary hearing.

Following that hearing, the ALJ concluded that complainants had failed to establish their claim of discrimination, but had established their claim that the University had proceeded in an arbitrary and capricious manner in abolishing Hughes' position.

The ALJ found that each of the complainants had been employed by the University for a number of years and had received good to outstanding ratings. The ALJ found that the budget committee had failed to consider: (1) the University's "vision statement" which held as a principle the attraction, development, and retention of excellent faculty and staff; (2) the job performance or contribution of the individuals whose positions were to be abolished; (3) issues of diversity and discrimination in recommending the elimination of positions; (4) the retention rights of the affected employees; and (5) the impact of the promotions and salary increases for two administrators.

Accordingly, the ALJ ordered complainants reinstated to their pre-reorganization positions and awarded them back-pay and benefits.

Both parties appealed the ALJ's decision to the Board. The Board adopted the ALJ's findings and conclusions and only the University seeks review of the Board's decision before this court.

## I.

The University first contends that the Board erred in affirming the ALJ's order denying its motion to dismiss Hughes' appeal. The University's argument is that under Board Rules and Interpretive Guidelines, Hughes has no right to appeal the abolition of her position as Director of Auxiliary Services because she was able to exercise her retention rights and "bump" into a position with similar base pay, status, and tenure. We are not persuaded.

Since the University's action was not disciplinary in nature, the complainants are not entitled to an appeal pursuant to the provisions of the Colorado Constitution governing public employees. *See* Colo. Const. art. XII, § 13(8). However, § 24–50–125(5), C.R.S. (1988 Repl.Vol. 10B) states:

[T]he board shall hold a hearing within forty-five days of the appeal, upon request by the employee or his representative, for *any certified employee in the state personnel system who protests any action taken which adversely affects the employee's current base pay as defined by board rule, status, or tenure.*

And, § 24–50–125(5) is implemented by State Personnel Board Rule 10–5–1, 4 Code Colo. Reg. 801–1, which contains similar language, provides the appeal must be filed within ten days of notice of the action taken, and distinguishes "total earnings" from the term "base pay."

Section 24–50–125, C.R.S. (1988 Repl.Vol. 10B), which deals principally with disciplinary matters, is designed to implement and parallels the language of Colo. Const. art. XII, § 13(8). But, in our view, § 24–50–125(5) is obviously intended to expand those instances in which the Board is required to conduct a hearing beyond those required by the Constitution and to provide a procedural framework for these additional hearings similar to that provided for disciplinary actions.

We do not read § 24–50–125(5) as limiting either the jurisdiction of the Board to conduct hearings or an employee's right to appeal to the Board. While the Board, the Department of Personnel, and the office of State Personnel Director are all created by

the Constitution without a specified hierarchy, it is apparent that the Board is ultimately responsible for protecting the rights of public employees. *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988 (Colo.1991); *Spahn v. State Department of Personnel,* 44 Colo.App. 446, 615 P.2d 66 (1980); *see also Renteria v. Department of Labor & Employment,* 907 P.2d 619 (Colo.App.1994).

The state personnel system is intended to assure that appointments and promotions are made based on merit and fitness, without regard to race, creed, color, or political affiliation, and that persons may hold their respective positions during efficient service or until retirement. The personnel system limits the ability of an employer to select, dismiss, suspend, and discipline employees. Colo. Const. art. XII, § 13(1) & § 13(8); *Colorado Ass'n of Public Employees v. Department of Highways, supra.*

The personnel system contemplates the laying off of certified employees for lack of work, lack of funds, and, in the event of reorganization, requires that employees be protected and accorded rights in such an eventuality. Section 24–50–124, C.R.S. (1988 Repl.Vol. 10B). Reductions in force and reorganizations can be abused when implemented for the purpose of terminating, or in a manner which terminates, a disfavored or targeted employee or group of employees.

To foreclose an appeal by an employee affected by a layoff would be to deny any administrative recourse for conduct of an employer or appointing authority which violates the stated purposes of the state personnel system. We do not believe that result was intended by the General Assembly or mandated by § 24–50–125(5). While there is no specific authority authorizing the claimant's appeal to the Board, there is, likewise, no prohibition.

In this instance, the complainants alleged that the University acted in an arbitrary, capricious, and discriminatory manner in designing and implementing a reorganization which eliminated a position held by Hughes. These allegations are sufficient to raise issues cognizable on appeal to the Board.

Therefore, the ALJ was correct in denying the University's motion to dismiss.

## II.

■ The University contends that the Board erred in adopting the ALJ's conclusion that the actions of the University, with regard to the reorganization and reduction plan, were arbitrary and capricious. It argues that the ALJ and the Board applied an incorrect standard of review in evaluating its actions with regard to the reorganization, reduction, and restructuring plan. We agree.

This appeal is before us pursuant to § 13–4–102(1)(p), C.R.S. (1996 Cum.Supp.), and § 24–50–125.4, C.R.S. (1996 Cum.Supp.).

The ALJ's characterization of the University's action as arbitrary and capricious is a finding of ultimate fact. *See generally Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982). The applicable standard of review requires us to affirm this finding of ultimate fact unless it is unwarranted by the record or has no reasonable basis in the law. *Renteria v. Department of Labor & Employment, supra; see also Halverstadt v. Department of Corrections,* 911 P.2d 654 (Colo.App. 1995).

■ The actions and decisions of the University related to, among other things, its goals, its values, its priorities, and matters of administrative efficiency and style are issues peculiarly addressed to the discretion of the institution. Therefore, the decisions and acts of the University in reorganizing itself, allocating its resources, and meeting its budgetary contingencies must be affirmed on review if there is a rational basis for the action taken. *Carter v. Small Business Administration,* 40 Colo.App. 271, 573 P.2d 564 (1977).

Complainants do not argue on appeal that the financial shortfall which initially prompted the reorganization, or the creation of an "Opportunity Fund," was either illusory or pretextual. In addition, complainants do not argue that the University violated any particular procedural or substantive statute, rule, or regulation governing the personnel system. The ALJ and the Board both found

against complainants' claims of age and sex discrimination with ample support in the record, and those findings are not appealed.

While other matters are obviously involved, the principal thrust of the complainants' case at the hearing was, and on appeal is, the failure of the budget committee to consider the complainants' individual performances in, and their unique qualifications for, their respective positions. Hughes' duties involved the supervision of support functions such as the telecommunications system and the mail room. Both Curry and Reeverts hold masters degrees in business from the University and were employed in the business school. Curry was principally involved in undergraduate, graduate, and foreign student academic advising. Reeverts was responsible for external relations, which involved marketing, fund raising, alumni relations, and building relationships with the local business community.

The assignment of job responsibilities of Hughes and Curry within the business school had not been fully negotiated by the time of the hearing, and there was concern expressed that Hughes did not have the background and talents required for either job in the business school, or any combination of both jobs. The dean of the business school was new and was in the process of arriving on campus when the reorganization occurred, impacting his office.

As set out above, the record reveals that the ALJ's decision was premised on her determination that the University, through the budget committee, had not considered several significant issues. The ALJ concluded that the consideration of these matters was necessary to implement a reasonable reorganization, reduction, and restructuring plan. Further, relying in part on *Van DeVegt v. Board of Commissioners*, 98 Colo. 161, 55 P.2d 703 (1936), the ALJ concluded that these omissions made the recommendations of the budget committee "speculative at best" and the actions of the University premised on these recommendations arbitrary and capricious. We do not consider *Van DeVegt* as a proper basis for sustaining the ALJ's ruling.

In *Van DeVegt v. Board of Commissioners, supra,* our supreme court held that mandamus was not available to compel a discretionary action, in that case to compel the issuance of a liquor license. The evidence to be considered by the commissioners in considering whether to grant a license was specified by statute but the weight to be given the evidence was addressed to the sound discretion of the board. The court stated:

> Capricious or arbitrary exercise of discretion by an administrative board can arise in only three ways, namely: (a) By neglecting or refusing to use reasonable diligence and care to procure such evidence as it is by law authorized to consider in exercising the discretion vested in it. (b) By failing to give candid and honest consideration of the evidence before it on which it is authorized to act in exercising its discretion. (c) By exercising its discretion in such manner after a consideration of evidence before it as clearly to indicate that its action is based on conclusions from the evidence such that reasonable men fairly and honestly considering the evidence must reach contrary conclusions.

*Van DeVegt v. Board of Commissioners, supra,* 98 Colo. at 166–67, 55 P.2d at 705.

The failure to gather, hear, and consider evidence required by statute is materially different from the failure, if failure there be, to gather, hear, and consider evidence, the consideration of which is discretionary.

For example, one of the matters that the ALJ found the budget committee had failed properly to consider in light of the goal to hire and retain good employees was the performance of Hughes and the impact of her exercising retention rights. This "omission" was at the direction of the Chancellor who wanted the recommendations to be premised on function, not personalities, and because the exercise of retention rights is at the election of each displaced employee in turn and is not predictable.

The decisions the University had to make involved not only matters of budget and administration but also matters of services and future goals. At their core, these matters consist of a multitude of policy considerations, including the University's mission and

core values, its program priorities and focus, and the initiatives it hopes to emphasize in its future development. The factors to consider and the weight or priority to be given any particular factor is for the University to determine. With regard to matters of this nature, the University possesses broad discretionary authority to develop and adopt its plans.

The scope of review of agency action of this nature is exhausted if a rational basis is found for the decision made or the action taken. *Carter v. Small Business Administration, supra.* It is not within the province of the ALJ, the Board, or this court to operate or second-guess the University in the making of these decisions which are based on intertwined, and conflicting, policy grounds. The fact that the ALJ, the Board, or this court may disagree with the decision, or conclude that the University failed to consider adequately all appropriate circumstances, does not deny the decision a rational basis.

In addition, the budget committee was advisory only. The ultimate decision was made by the Chancellor. While examination of the Chancellor was brief, it is apparent from the record as a whole that, in accepting and implementing the recommendations of the budget committee, she was aware of the many and conflicting elements of the decision.

After reviewing the record in its entirety, we conclude that there is a rational basis for the decisions made and the actions taken by the University in designing and implementing its response to the directive of the Board of Regents to reduce operating expenses and in its efforts to realize savings in order to make funds available to fund future development. We further conclude there is substantial evidence in the record that the University's actions were generally consistent with its announced mission of the institution, its core values, its program priorities and focus, and the initiatives it hopes to emphasize in its future development.

In addition, there is substantial evidence in the record that the University's actions complied with the requirements of the state personnel system. Indeed, the ALJ did not find any violations of this statutory and regulatory scheme and none is disclosed by the record. Clearly, the impetus for the University's reorganization, reduction, and restructuring plan falls within the criteria for the separation of employees from state service. *See* § 24–50–124.

Accordingly, we conclude, from our review of the entire record, that there was a rational basis for the University's exercise of its discretion, *see Carter v. Small Business Administration, supra,* in formulating and implementing its plan to reorganize and meet the short-term financial contingencies. Thus, the Board erred in adopting the ALJ's ultimate conclusion. *See Lee v. Board of Dental Examiners, supra.*

### III.

In light of this disposition, we need not address the remaining contentions of the University regarding the actions of the Board.

The order reinstating complainants to the positions they held prior to the University's reorganization and awarding them back-pay and benefits is reversed.

HUME, J., concurs.

RULAND, J., dissents.

Judge RULAND dissenting.

Because I disagree with the interpretation of the record and the conclusion reached in part II of the majority opinion, I respectfully dissent.

The Chancellor's decision to terminate Hughes' position was based solely on the committee's recommendation. Prior to receiving that recommendation, the Chancellor informed the committee in writing and acknowledged in her testimony that the "vision statement" was to be considered in the committee's deliberations relative to all budget issues. This statement specifically includes as the first "core value" of the University that "we will develop and *retain* outstanding faculty, staff, and students ...." (emphasis supplied)

While the Chancellor also indicated that she wanted the committee recommendations

to be based on function and not on personalities, this advisement is not the equivalent of telling the committee to disregard the job performance and contributions of the staff as required by the vision statement. Here, it is undisputed that complainants performed very capably in their former positions and made significant contributions as well.

As a result, the ALJ found, based upon substantial evidence in the record, that the committee failed either to obtain the necessary information or to consider the criterion contained in the vision statement. Because there is substantial evidence in the record to support this finding, that determination is binding upon this court. *See Aspen Highlands Skiing Corp. v. Apostolou,* 866 P.2d 1384 (Colo.1994).

The ALJ also found with substantial record support that the cost savings allegedly projected by the committee were speculative at best because the committee did not consider the effect that the exercise of retention rights would have on the budgeting process. Similarly, the record reflects that the exercise of retention rights may, as it did here, move personnel into positions for which they are not trained and qualified thereby resulting in inefficient and less effective job performance.

Under these circumstances, I am unable to concur with the majority's conclusion that substantial evidence in the record supports the University's actions as generally consistent with its announced mission, its core values, and its program priorities. Instead, I agree with the State Personnel Board and the ALJ that the decision to eliminate Hughes' position was arbitrary and capricious because the committee failed to obtain all of the information that it needed or was directed by the Chancellor to obtain in reaching its recommendation.

As a result, the committee, and thus the Chancellor, failed to consider the information that should have been considered. *See Van De Vegt v. Board of Commissioners,* 98 Colo. 161, 55 P.2d 703 (1936); *see also Mobell v. Meyer,* 172 Colo. 12, 469 P.2d 414 (1970).

Accordingly, I would affirm the Board's order.