**DEPARTMENT OF HIGHER EDUCATION, COLORADO STUDENT LOAN PROGRAM, Appellant,**

v.

**Manmohan SINGH, and Department of Personnel, State Personnel Board, Appellees.**

No. 96CA0674.

Colorado Court of Appeals.
Div. III.

May 1, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Hollie R. Stevenson, Assistant Attorney General, Denver, for Appellant.

Susan Graham Barnes, Denver, for Appellee Manmohan Singh.

No Appearance for Appellee Department of Personnel, State Personnel Board.

Opinion by Judge RULAND.

The Colorado Student Loan Program (CSLP), a division of the Department of Higher Education, appeals from a decision of the State Personnel Board (Board) affirming an order of the Administrative Law Judge (ALJ). This order required CSLP to reinstate Manmohan Singh (Singh) as an employee of CSLP, with back pay and benefits, and to pay his attorney fees. We affirm.

Singh was employed for two years by CSLP as a data entry operator. He received "good" job performance ratings until performance standards for data entry were adopted in April of 1994. However, after these standards were adopted, Singh received three corrective notices in a period of approximately four months for the alleged failure to input data accurately. His supervisor then wrote to CSLP's designated appointing authority and recommended that disciplinary action be taken. After a hearing, Singh's employment was terminated.

Singh appealed his termination to the State Personnel Board. After an evidentiary hearing, the ALJ found that CSLP failed to establish by a preponderance of the evidence that Singh's data input performance was such as to warrant his dismissal. Accordingly, the ALJ concluded that the decision to terminate his employment was arbitrary and capricious. The Board affirmed the ALJ's decision.

## I

■ Initially, we address Singh's contention that this appeal must be dismissed. Specifically, Singh argues that the Board did not acquire jurisdiction to review the ALJ's decision because CSLP failed to file a timely designation of record with the Board pursuant to § 24-4-105(15)(a), C.R.S. (1996 Cum. Supp.) of the Administrative Procedure Act (APA). We disagree.

Section 24-4-105(15)(a) provides in pertinent part that:

Any party who seeks to reverse or modify the initial decision of the administrative law judge ... shall file with the agency, within twenty days following such decision, a designation of the relevant parts of the record....

While the statute mandates that the designation be filed within 20 days, the General Assembly has not specified what sanctions, if any, will result from an untimely filing. This omission is in contrast to § 24-4-105(14)(c), C.R.S. (1996 Cum.Supp.) which provides that a party waives any right to judicial review if a notice of exception is not filed within 30 days after service of the ALJ's initial decision.

Because § 24-4-105(15)(a) does not specify any sanction for the late filing of a designation, we hold that the General Assembly did not intend this requirement to be a jurisdictional prerequisite to an appeal. *See City of Lamar v. Lamar Police Department Money Purchase Pension Trust*, 857 P.2d 457 (Colo. App.1992)(a statute should not be interpreted to mean that which it does not express).

The purpose of the designation is to allow preparation of an appropriate record for review of the challenged decision. The more important purpose of the notice of exception, on the other hand, is to advise the litigants that additional proceedings will be conducted and that, therefore, the agency decision may not be final. We therefore conclude that the different purpose of each pleading and the sanction imposed for one failure and not the other supports the Board's conclusion that the timely filing of the designation is not jurisdictional.

## II

■ CSLP contends that the ALJ erred in allowing Singh's expert to testify about the standards applied in the data processing industry to measure data entry performance, arguing that the expert was not qualified and that her testimony was not relevant. We disagree.

The rules of evidence applicable in civil cases generally apply to hearings conducted pursuant to the APA. Section 24-4-105(7), C.R.S. (1988 Repl.Vol. 10A). Under CRE 702, a witness may provide expert opinion testimony if, among other things, specialized knowledge will assist the trier of fact to understand the evidence or to determine a

494

fact in issue. Further, a witness is qualified to testify as an expert if the witness has the requisite knowledge, skill, experience, training, or education.

■ Also, because the rules of evidence apply, the judicial interpretation of those rules likewise applies to these proceedings. Accordingly, we necessarily conclude that the ALJ must be granted broad discretion to determine whether a witness is qualified to testify as an expert. *See Corcoran v. Sanner,* 854 P.2d 1376 (Colo.App.1993)(trial court has sound discretion under the rules of evidence to determine if expert qualified). And, the ALJ's decision may not be disturbed on appeal unless it appears that such was manifestly erroneous. *See One Hour Cleaners v. Industrial Claim Appeals Office,* 914 P.2d 501 (Colo.App.1995); *see also Lanari v. People,* 827 P.2d 495 (Colo.1992).

■ Further, a trial court may admit expert testimony if it appears that the witness can offer assistance on a subject not within the knowledge or common experience of people of ordinary intelligence. *See Scognamillo v. Olsen,* 795 P.2d 1357 (Colo.App.1990).

Here, Singh's expert was a qualified vocational rehabilitation specialist with experience in conducting market surveys to ascertain various job requirements. She testified that she had conducted a number of market surveys in her work and that she conducted a survey in this case to determine the method by which error rates are generally calculated for data entry operators. The methodology used by the witness for conducting the survey is not challenged. *See Corcoran v. Sanner, supra.* Also, there is nothing in the record to suggest that performance standards for data entry operators are common knowledge. Hence, by virtue of the general applicability of the rules of evidence to these proceedings, the testimony of Singh's expert was properly admitted.

Moreover, under § 24-4-105(7), an ALJ may consider evidence not admissible under the rules of evidence if such has probative value commonly accepted by reasonable persons. The record indicates that the testimony of Singh's expert would meet this standard as well.

Accordingly, we perceive no abuse of discretion on this record in the ALJ's determination that the expert was qualified. And, we conclude that this evidence was relevant in determining whether CSLP's method of computing error rates was reasonable.

### III

■ CSLP also contends that the ALJ erred in relying in part upon the testimony of Singh's expert to conclude that CSLP did not establish an unacceptably high error rate in Singh's work. We are not persuaded.

At the hearing, Singh presented expert testimony to establish that CSLP's standard for acceptable performance did not conform with the standard applied in the data entry industry. The industry standard requires evaluation based upon the total number of key strokes the operator makes as compared to the frequency of errors made in that total. Further, it assumes that every operator will make some errors in inputting data from handwritten documents. This standard therefore requires proofreading all the operator's work to ensure accuracy and, thus, to determine the actual numbers of errors as compared to the total strokes.

Even if we agree, as CSLP contends, that it may establish standards different from those used in the industry, the ALJ found with record support that CSLP's method for measuring error rates was unreliable because it did not accurately measure performance. Thus, CSLP's failure of proof was based primarily on the shortcomings of its method.

Specifically, it is undisputed that only spot checks were made of each employee's work, but there were more spot checks made of Singh's work than that of other employees. Further, the ALJ found that the methodology used in the spot checks was not reliable. In this regard, the ALJ found:

> For example, if [the supervisor] assigned Singh a batch of 100 applications to enter data from and Singh made 10 errors on one application and no errors on the remaining 99 applications, [the supervisor] concluded that Singh had a 10% error rate. The 10% error rate was determined for a given day despite the fact that during that

day Singh would complete numerous batches of work. Furthermore, the 10% error rate was calculated despite the fact that each application required the entry of numerous data.

Thus, if the total number of strokes required for the 100 applications was 1,000, the error rate for 10 errors under industry standards would be only one percent. Similarly, if the standard was based solely on the number of applications and not the number of strokes, the error rate for 10 errors on only one application would be one percent. Hence, we conclude that the ALJ's finding is fully supported by the record.

## IV

■ Notwithstanding the ALJ's findings relative to CSLP's method of evaluating Singh's performance, CSLP argues that the ALJ erred in concluding that its decision to terminate Singh was arbitrary and capricious. Again, we are not persuaded.

■ The determination that CSLP's decision was arbitrary and capricious constitutes an ultimate finding of fact. *See Hughes v. Department of Higher Education,* 934 P.2d 891 (Colo.App. 1997). We may not overturn that finding unless it is either unsupported by the record or has no reasonable basis in the law. *See Renteria v. Department of Labor & Employment,* 907 P.2d 619 (Colo. App.1994).

As noted, the ALJ's decision was based on the substantially unreliable method adopted by CSLP for calculating Singh's error rate. Hence, in our view, reasonable persons would not "fairly" reach the decision to terminate based upon this record. *See Van De Vegt v. Board of Commissioners,* 98 Colo. 161, 55 P.2d 703 (1936). Therefore, we may not disturb the ALJ's ultimate finding that CSLP's decision was arbitrary and capricious.

## V

■ Finally, CSLP contends that the ALJ erred in awarding attorney fees to Singh under § 24–50–125.5, C.R.S. (1988 Repl.Vol. 10B) on the basis that the personnel action against Singh was groundless. We disagree.

Section 24–50–125.5 provides that:

[I]f it is found that the personnel action from which the proceeding arose ... was instituted frivolously, in bad faith, maliciously, or as a means of harassment or was *otherwise groundless* ... the department, agency, board, or commission taking such personnel action shall be liable for any attorney fees and other costs incurred by the employee....

(emphasis supplied)

■ An action is groundless if it is not supported by any credible evidence. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

Here, the ALJ in effect found that CSLP had adopted an unreasonable standard by which to judge Singh's performance. The ALJ noted, among other things, that the performance standard and the error rate relied upon for Singh's termination was not supported by common sense. Certainly, a performance standard that is not supported by common sense may properly be characterized as groundless.

Accordingly, because CSLP has no authority to seek Singh's discharge based upon an unreasonable standard for work performance, we conclude that defense of this standard is properly characterized as groundless. *See Coffey v. Colorado School of Mines,* 870 P.2d 608 (Colo.App.1993). Hence, we find no error in the award of attorney fees.

Accordingly, the order is affirmed.

PLANK and JONES, JJ., concur.