[No. 6287.]

## SMITH VS. THE PEOPLE.

1.   CONSTITUTIONAL LAW—*Police Power—Public Health*—The police power extends to the preservation and promotion of the public health.   The Legislature may define and control the practice of medicine and prescribe the qualifications of those who assume to follow that calling—(273).

2.   CRIMINAL LAW—*Practice of Medicine Without a License* —Defendant, without any license from the State Board of Medical Examiners, maintained an office for receiving, treating and healing the sick; assumed the title of Healer, and claimed that by virtue of power from the Almighty he was able to cure any disease that was amenable to the treatment of medical men, and many that were not.   He made a charge against some of his patients; others he treated without charge.   Held that though he belonged to the Divine Scientific Healing Mission, an incorporated society, the objects of which were "healing suffering humanity by the laying on of hands," though he was a preacher in that society, and held services on Sunday, where he preached and healed the sick, inasmuch as he healed the sick or complaining, for hire, he had incurred the penalties of the statute. (Rev. Stat. c. 127)—(275-277).

3. ——*Information*—The proviso in the statute "nothing in this act shall prohibit the practice of the tenets or general belief of any church, not prescribing medicines or administering drugs," is not descriptive of the offense, and need not be negatived in the information—(277).

4. STATUTES—*Construction*—A statute (Rev. Stat. c. 127), requiring that all those proposing to follow the healing art shall submit to a certain examination, and prohibiting the practice of medicine without a license from the State Board of Medical Examiners, under a penalty, is to be liberally construed to accomplish its objects; it is not to be classed with those statutes which are construed most strongly against the people—(276).

5. STATUTES CONSTRUED—A statute regulating the practice of medicine and requiring all those who assume to follow that calling to secure a license from the State Board of Medical Examiners contained a proviso that "nothing in this act shall be construed to prohibit gratuitous service in case of emergency, nor the practice of the religious tenets or general belief of any church whatsoever, not prescribing medicines or administering drugs." Held the proviso does not justify or excuse the assumption by an unlicensed person of the title of Healer, the maintenance of a place where the sick or complaining are received and treated for hire, and the holding of one's self out as able to cure or relieve diseases, even though the cure is accomplished by the laying on of hands, and the accused is a preacher in a society incorporated with the object of effecting cures in this manner —(277).

*Error to Denver District Court*—HON. HUBERT L. SHATTUCK, Judge.

Edward C. Smith was tried, convicted and sentenced to pay a fine in the district court of the city and county of Denver, on an information charging: "Practicing medicine without a license." It contains three counts: The first, that he unlawfully practiced medicine by holding himself out to the public as being engaged in the diagnosis and treatment of diseases and injuries of human beings, without a license; the second, that he unlawfully practiced medicine by maintaining an office for the reception, examination and treatment

of persons suffering from disease and injury of mind and body, without a license; the third, that he unlawfully practiced medicine by attaching to his name the title "Healer," which indicated that he was engaged in the treatment and diagnosis of diseases and injuries of human beings, without a license.

Mr. W. T. Rogers for plaintiff in error.

Hon. Benjamin Griffith, attorney general, Mr. Harry E. Kelley and Mr. Charles H. Haines for the people.

Mr. Justice Garrigues delivered the opinion of the court.

1.    Chapter 127, Rev. Stats., 1908, regulating the practice of medicine, is for the protection of the public health.    It creates a State Board of Medical Examiners; requires all persons desirous of practicing medicine within the state, to obtain a license from the board; makes it a misdemeanor to practice medicine in the state without a license; and defines the practice of medicine.    Defendant had no license.

Section 6069 defines the "Practice of Medicine" to be, holding ones self out to the public as being engaged in the diagnosis and treatment of diseases or injuries of human beings; or the suggestion, recommendation or prescribing any form of treatment for the intended palliation, relief or cure of any physical or mental ailment of any person, with the intention of receiving therefor, directly or indirectly, any fee, gift or compensation whatsoever; or the maintenance of any office for the reception, examination and treatment of any persons suffering from disease or injury of body or mind; or attaching any word or abbreviation to ones name indicative that he is engaged in the treatment or diagnosis of diseases or injuries of human beings.    It further provides, if any person shall hold himself out to

the public as being engaged in the diagnosis and treatment of diseases or injuries of human beings, or shall suggest, recommend or prescribe any form of treatment for the palliation, relief or cure of any physical or mental ailment of any person, with the intention of receiving therefor, directly or indirectly, any fee, gift, or compensation whatsoever; or shall maintain an office for the reception, examination and treatment of diseased or injured human beings; or shall attach any word or abbreviation to his name indicative that he is engaged in the treatment of diseased or injured human beings, and shall not theretofore have received or shall not then possess a license to practice medicine under the laws of this state, he shall be deemed to be practicing medicine in violation of the statute. But nothing in the act shall be construed to prohibit the practice of the religious tenets or the general belief of any church whatsoever, not prescribing medicine. The information charges the violation of three provisions of the section: first, holding himself out to the public as being engaged in the diagnosis and treatment of diseases; second, maintaining an office for the reception, examination and treatment, for pay, of persons suffering from disease: third, attaching to his name the title, "Healer," indicating that he is engaged in the business of treating diseases.

If the legislature had power to create the State Board of Medical Examiners, and define the practice of medicine; and the acts of the defendant come within the statutory definition and are not excluded by the exemption; and the evidence shows he committed any one of the acts charged, the conviction should be sustained.

2. The legislature under the police power of the state, could create the State Board of Medical Examiners, and fix its powers and duties. The police power of the state relates to the preservation and promotion of the health, safety and morals of the people. The law is settled that the legislature may control the practice of

medicine. Such enactments emenate from that branch of the police power of the state having to do with the protection of the public health.—*Harding v. People,* 10 Colo. 387; *Reetz v. Mich.,* 188 U. S. 505; *Dent v. West Virginia,* 129 U. S. 114; *Hawker v. N. Y.,* 170 U. S. 192; *State v. Marble,* 72 O. St. 21; *State v. Wilhite,* 132 Ia. 226; *State v. Davis,* 194 Mo. 485; *Ex Parte Whitley,* 144 Cal. 169; *Parks v. State,* 159 Ind. 226; *State v. Heath,* 125 Ia. 589; *Little v. State,* 60 Nebr. 749; *State v. Buswell,* 40 Nebr. 158; *Bragg v. State,* 134 Ala. 166; *People v. Gordon,* 194 Ill. 560; *Jones v. People,* 84 Ill. App. 453; *State v. Gravett,* 65 O. St. 289; *People v. Mulford,* 125 N. Y. Sup. 680; *State v. Welch,* 129 N. C. 579; *Bibber v. Simpson,* 59 Me. 181; *Hewitt v. Charier,* 16 Pick. 353; *Davidson v. Bohlman,* 37 Mo. App. 576; *Eastman v. People,* 71 Ill. App. 236; *People v. Allcutt,* 189 N. Y. 517; *O'Neil v. Sate,* 115 Tenn. 427; *State v. Yegge,* 19 S. Dak. 234; *People v. Arendt,* 60 Ill. App. 89; *People v. Phippin,* 70 Mich. 6; *Com. v. St. Pierre,* 175 Mass. 48; *Com. v. Jewelle,* 85 N. E. 858; *Com. v. Porn,* 196 Mass. 326; *State v. Bresee,* 114 N. W. 45; *State v. Heffernan,* 28 R. I. 20; *State v. Pollman,* 98 Pac. 88.

3. The state has the right to determine and define what constitutes the practice of medicine.—*State v. Edmunds,* 127 Ia. 333; *State v. Yegge,* 19 S. Dak. 234; *Little v. State,* 60 Nebr. 753; 30 Cyc. 1561.

4. The people's evidence shows that defendant kept a place of business for healing the sick, at 1439 California street, City and County of Denver; that there were signs in the windows reading: "Professor Smith, Healer." "Office hours 9 to 12, 2 to 6;" a sign on the door reading: "Professor Smith, Healer." "Walk in." His office comprised two nicely furnished rooms, with carpets, chairs, tables, pictures, etc. He claimed his treatment was a natural one—a gift from the Almighty; claimed to restore people to health; said he could cure any disease a medical man could, and

many they could not; could cure diarrhoea, and stomach, spinal, nervous and throat troubles, and pneumonia; mentioned several cases of pneumonia he had recently cured that doctors had given up; said he diagnosed his cases and treated them without medicine.

Defendant testified that he belonged to the church of "The Divine Scientific Healing Mission," a corporation; that he was a preacher of the gospel, and a healer of the sick; held services Sunday afternoons at Howe Hall, where he preached and cured the sick; said his church had branches everywhere; he occupied a couple of living rooms, not an office, where he lived and treated the sick and afflicted without the use of drugs or a knife; some he charged, some he did not; never turned anyone away; the signs had been there for over two years and spoke for themselves; did not practice medicine or diagnose diseases; people came to his rooms. told him what was the matter with them, and he treated them; could not tell whether patients had gout, smallpox or rheumatism, but could and did treat and cure them; "Healer" means curing the sick. The certificate of incorporation of "The Divine Scientific Healing Mission," showing its objects to be: "preaching, teaching and practicing the gift of healing, guided and directed by divine power, by laying on of hands, regardless of faith, creed, sect or race, to promote peace on earth, good will to men;" also containing the tenets of "The Divine Scientific Healing Mission," as follows: "We believe in healing the suffering humanity by laying on of hands to be the gift of the divine spirit, and by sound reason we can comprehend its virtue," was offered in evidence and excluded by the court.

It is the nature of defendant's business, not the objects of the corporation or the tenets of his church that is in controversy. The evidence shows he was practicing medicine within the definition of the statute, and was using the title "Healer," to his name, to

indicate that he was engaged in the business of healing the sick. He treated in his office or place of business, for hire, persons suffering from disease, for the purpose of curing them. He held himself out to the public as a professional healer of diseases, and a practitioner of the healing art. The statute lays hands on commercial healing as a money making occupation, business or profession, regardless of the method of treatment or curative agency employed. It concerns the public health, and should be liberally construed to accomplish the object of its enactment. It does not belong to that class of penal statutes construed most strongly against the people. As a protection to the public health, it requires those engaged in the business of curing the sick, to possess certain qualifications. It is not concerned with the school, sect, or system of healing, or the method of treatment. One form of examination is required of all sorts of healers. All applicants must be examined in anatomy, physiology, chemistry, symptomatology, toxicology, pathology, surgery and obstetrics. All schools teach these branches, and use the same text books. They are the fundamentals in which all applicants must be grounded before they can be licensed to follow the business of curing the sick. There can be no difference of opinion among intelligent men on the subjects above enumerated; but there is great difference in regard to treatment; hence the statute expressly prohibits any examination in materia medica or therapeutics. In the eye of the statute, methods of treatment meet upon a level as curative agencies in healing human ills. There is no discrimination, partiality or monopoly. It requires, however, that the healer shall possess a reasonable amount of learning before he enters upon the business of curing the sick. The discrimination goes to the degree of learning, and not to the school, sect, system or creed. As a protection to the public health, the state fixes the standard of compe-

tency and makes the right to engage in the business dependent upon the possession of certain knowledge.

5.   Defendant claims he comes within the exemption which says:   "Nothing in this act shall be construed to prohibit  *  *  *  the practice of the religious tenets or general beliefs of any church whatsoever, not prescribing or administering drugs."   The constitution provides, there shall be no interference with the "free exercise and enjoyment of religious profession and worship."   The statute does not interfere with the free exercise of religion or worship.   Any persons, individually or collectively, any minister, or any church congregation may resort to prayer whenever they wish for the healing of the sick.   No attempt is made to interfere with religion or religious devotions. This does not, however, authorize one under the cover of religion or a religious exercise, to go into healing commercially for hire, using prayer as the curative agency or treatment.   Religion cannot be used as a shield to cover a business undertaking.   Defendant was engaged in a business venture, not a religious exercise. The practice of medicine, defined by our statute, means the practice of the healing art commercially, regardless of the curative agency employed.   The commercial practice of healing by prayer, followed as a money making venture or occupation, is the practice of medicine within the plain meaning of the statute.

6.   The exemption mentioned in the statute is not descriptive of the offense, and it was not necessary for the people to negative the exemption in the information. —*Johnson v. People,* 33 Colo. 230; *Langan v. People,* 32 Colo. 418; *Packer v. People,* 26 Colo. 306; *Poole v. People,* 24 Colo. 510; *Mitchell v. People,* 24 Colo. 533.

*Affirmed.*

CHIEF JUSTICE CAMPBELL concurs.

Mr. JUSTICE MUSSER concurs in the conclusion.

Mr. JUSTICE MUSSER specially concurring:

I concur in the conclusion only. In order to reach a verdict of guilty, the jury must necessarily have found, beyond a reasonable doubt, that the defendant did not come within the exception of the statute. The evidence that he was within the exception, if there was any, was such that no court would be warranted, in the face of the verdict, in saying that he did come within the exception. Of course, if, upon all the evidence, there was a reasonable doubt that he was without the exception, he was entitled to the benefit of that doubt and to an acquittal. It does not appear to me, upon all the evidence, that there could be any doubt that he was without the exception. The remarks of the trial judge, in the presence of the jury, were not right and were erroneous. In most instances, such things would necessarily be prejudicial to a defendant. In this case, the court fended the effect of his utterances, to some extent, by an instruction. Under the evidence, as it appears to me, there was no reasonable doubt that the defendant was without the exception of the statute, so that the jury must have found as they did in any event.

For these reasons, I look upon the error committed by the judge as not prejudicial, and feel that, upon the whole record, the defendant had a fair trial.