Dale G. HALVERSTADT and the State Personnel Board, Complainants–Appellees,

v.

DEPARTMENT OF CORRECTIONS, DIVISION OF ADULT SERVICES, BUENA VISTA CORRECTIONAL FACILITY, Respondent–Appellant.

No. 94CA0725.

Colorado Court of Appeals,
Div. II.

June 15, 1995.

Rehearing Denied July 20, 1995.

Certiorari Denied Feb. 26, 1996.

Clayton and Stone, L.L.C., April Bennett–Stone, Boulder, for complainant-appellee Dale G. Halverstadt.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Eric R. Decator, Asst. Atty. Gen., Denver, for complainant-appellee State Personnel Bd.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Diane M. Mi-

chaud, Asst. Atty. Gen., Denver, for respondent-appellant.

Opinion by Judge CASEBOLT.

The Department of Corrections, Division of Adult Services, Buena Vista Correctional Facility appeals the order of the State Personnel Board which affirmed that the layoff of Dale G. Halverstadt (complainant) was arbitrary, capricious, and contrary to law, and which awarded attorney fees to the complainant. We affirm the order in part and set it aside in part.

According to the findings of fact made by the Administrative Law Judge (ALJ), in 1993, the General Assembly directed the department to reduce the number of chaplain positions from thirteen to five. The department implemented this directive by applying a matrix of seniority and work performance to rank the chaplains and to lay off those with a lower overall rank. The complainant was among those laid off.

The complainant initiated this proceeding, arguing that State Personnel Rule 9–3–7(G), 4 Code Colo.Reg. 801–1 (1992), should be construed to require consideration of minimum qualifications in conjunction with seniority and performance. Consequently, he argued, it was arbitrary and capricious to lay him off while retaining two chaplains who did not meet minimum qualifications. He further asserted that the department was aware of the lack of qualifications of these two chaplains as early as 1988.

The department argued that this was an incorrect interpretation and application of Rule 9–3–7(G), which, it asserted, applies only to employees holding retention rights who are "bumped" out of a position. It argued that, because this case does not involve "bumping" employees, Rule 9–3–7(G) had no application. It also argued that, if minimum qualifications were relevant, the determination concerning qualifications was to be made at the time of initial employment and could not be challenged later.

The ALJ noted that Rule 9–3–7(G) does not specifically require a review of qualifications of those employees whose positions are not abolished in a layoff. However, she concluded that the rules pertaining to a layoff presume that employees retained do possess minimum qualifications for their positions and that the lack of those qualifications is a factor to be considered in reviewing the propriety of the layoff.

After reviewing the policies and rules relevant to job evaluation and qualifications, the ALJ concluded that minimum qualifications for a job are pertinent in reviewing the propriety of staff reduction in a layoff.

Further, she concluded that the complainant had presented ample evidence that two of the chaplains retained did not possess minimum qualifications. She found that the department had this information in its possession and concluded that the failure to consider it in the layoff determination resulted in an arbitrary and capricious decision to retain those two chaplains rather than the complainant who, she found, did possess minimum qualifications.

However, the ALJ denied attorney fees to the complainant on the basis that there was no evidence that the proceeding was frivolous, in bad faith, malicious, instituted as a means of harassment, or groundless.

Both sides sought review by the State Personnel Board. It affirmed the ALJ's resolution and also determined that the DOC's interpretation of the State Personnel Rules was flawed and, hence, contrary to law. On the issue of attorney fees, it reversed, concluding as an ultimate finding of fact that the department had acted in bad faith in its personnel action and defending the appeal of that action. Therefore, it awarded the complainant attorney fees and costs.

I.

The department contends that its actions in abolishing the complainant's position were not arbitrary, capricious, or contrary to law. It argues that it applied State Personnel Board Rule 9–3–6, 4 Code Colo.Reg. 801–1, correctly and that the ALJ and Board's resolution erroneously requires it also to apply State Personnel Board Rule 9–3–7(G), 4 Code Colo.Reg. 801–1, to determine whether all employees met minimum qualifications be-

fore considering seniority and performance. We disagree.

In 1992, the State Personnel Board adopted the current version of the portion of 4 Code Colo.Reg. 801–1 that governs layoffs and retention and re-employment rights of state employees. The policies adopted as a preface to the article include minimizing the impact of layoffs by exploring alternatives, not using layoffs as a substitute for other appropriate actions, and assessing the impact of any layoff on diversity in the workplace. State Personnel Board Policies 9–3(A), (B), and (C), 4 Code Colo.Reg. 801–1.

The rule, in pertinent part, provides that full-time employees whose positions are abolished may exercise retention rights first to full-time positions in the layoff retention process. Part-time employees whose positions are changed to full-time or abolished may exercise retention rights first to part-time positions in the layoff retention process. State Personnel Board Rule 9–3–5, 4 Code Colo.Reg. 801–1.

State Personnel Board Rule 9–3–6, 4 Code Colo.Reg. 801–1, defines "seniority," "three-year time bands," "performance," and "other appropriate factors." However, this rule does not define "layoff" or "retention."

State Personnel Board Rule 9–3–7, 4 Code Colo.Reg. 801–1, sets out the rights of certified, trial service, and conditional employees to retain employment in a layoff. Subsections A through E of that rule outline the priorities for retention opportunities, with Subsection A requiring that a retention opportunity must be offered to an employee first in the employee's current class. State Personnel Board Rule 9–3–7(A)(1), 4 Code Colo.Reg. 801–1.

Subsection F applies the definitions of State Personnel Board Rule 9–3–6 to establish a matrix of seniority and performance ratings in ranking employees for retention opportunities. Subsection G of Rule 9–3–7 provides that an employee shall have retention rights to a position only if the employee meets minimum qualifications, including bona fide special qualifications, for the position.

Subsection H addresses the existence of special qualifications attached to a position.

In order to protect a position in a layoff, the special qualifications must be bona fide *and* documented at least thirty days prior to the beginning of the layoff.

### A.

■ Applying principles of statutory construction to the State Personnel Board Rules, we conclude that the entire article at issue should be considered to reach a meaningful understanding of layoff and retention proceedings. *See* § 2–4–201, C.R.S. (1980 Repl.Vol. 1B); *People v. Russell*, 703 P.2d 620 (Colo.App.1985). Also, the words and phrases of the rules are to be construed according to their familiar and generally accepted meaning. *See* § 2–4–101, C.R.S. (1980 Repl.Vol. 1B); *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973).

■ Interpretation of the personnel rule by the agency charged with enforcement of that rule is generally entitled to great deference. *See Nicholas v. North Colorado Medical Center, Inc.*, 902 P.2d 462 (Colo.App. 1995). The agency interpretation is to be accepted if it has a reasonable basis in law and is warranted by the record. *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981).

■ The issues presented in this case require understanding of the word "retention." In the rules at issue, the concepts of layoff and retention are intertwined with neither term defined. *Webster's Third New International Dictionary* 1938 (1986) defines "retention" as "the act of retaining;" it defines "retain" as "to hold or to continue to hold or use."

Obviously, as an employee class is downsized, some employees are laid off and some keep their positions. Thus, it is apparent that "retention" does not refer only to employees "bumping" into positions after their previous position has been abolished. Instead, "retention" must also refer to keeping a position within the class as a class of employees is downsized.

Furthermore, the matrix for determining which persons are subject to layoff is within the same rule that governs retention rights.

*Compare* State Personnel Board 9–3–7(F), 4 Code Colo.Reg. 801–1, *with* State Personnel Board Rule 9–3–7(A), 4 Code Colo.Reg. 801–1. Hence, we conclude that "retention" has a dual meaning addressing both the right to keep a position during a downsizing and also the right to "bump" into a position after a previous position has been abolished.

Therefore, because the rules addressing retention rights are intertwined with the layoff process, the qualifications for retaining a position apply equally to maintaining a position and "bumping" into another position.

### B.

Contrary to the department's argument, the Board did not require it to verify all certified employees' qualifications before applying the seniority and performance matrix. Rather, it adopted the findings and conclusions of the ALJ. The ALJ determined that Rule 9–3–7 does not specifically require a review of the qualifications of those persons whose positions are not abolished in a layoff but she concluded that applicable law should be read to presume that employees who retain their positions following a layoff possess the minimum qualifications. Therefore, we reject the department's argument as mischaracterizing the Board's decision.

We note that the seniority and performance matrix, although based on definitions set forth in State Personnel Rule 9–3–6, 4 Code Colo.Reg. 801–1, is established in State Personnel Board Rule 9–3–7(F), 4 Code Colo. Reg. 801–1. Therefore, as discussed above, we determine that the requirements in these rules are applicable to an integrated layoff-retention process inherent in downsizing. As a result, minimum qualifications for the position are necessary for an employee to retain a position during a layoff.

This conclusion is supported by cases which arose under previous versions of regulations governing layoff and retention of state employees. In *Baldwin v. Department of Labor & Employment,* 844 P.2d 1286 (Colo.App.1992), the complainant attempted to retain her position by arguing that special qualifications had attached to her position which should have insulated her from being "bumped" by an employee who lacked those special qualifications. Because no special qualifications had been attached to the position, a division of this court concluded that the complainant was not protected from being "bumped" by an employee who was otherwise qualified for the position.

In *Evans v. Mount View School for Girls,* 34 Colo.App. 167, 525 P.2d 1172 (1974), a teacher was not allowed to "bump" into a teaching position for which she lacked special qualifications. There, a division of this court held that the special qualifications had to be met before retention rights could be exercised.

Although both of these cases involved the issue of special qualifications, both shed light on the fact that the state employee had to meet the qualifications for a position to have any rights to maintain it in the layoff process.

Moreover, we agree with the reasoning set forth by the ALJ in analyzing the policies and procedures underlying layoffs and retention.

Section 24–50–104(3), C.R.S. (1988 Repl.Vol. 10B), provides:

> Positions having comparable duties and responsibilities shall be grouped into classes subject to the same descriptive title, a definition of duties and responsibilities, and requirements for filling positions in the class.

State Personnel Board Policy P2–1 states:

> The director shall be responsible for the establishment and maintenance of a job evaluation system which will be uniformly applied to all employees and positions in the state personnel system. The job evaluation shall provide the basis upon which all positions are examined for, evaluated and compensated. The system shall be based on sound and professionally acceptable techniques for analyzing occupations and evaluating positions and shall consist of classes, which shall: bear a descriptive title; be subject to the same definitions of duties and responsibilities; require the same minimum training and experience; and be subject to the same compensation range.

State Personnel Board Rule 2–1–1, 4 Code Colo.Reg. 801–1, sets forth this requirement:

> The director shall develop and publish procedures to assure the job evaluation system is uniformly applied for all personnel transactions and budget administration purposes.

Positions are filled according to State Personnel Board Procedure 5–2–1, 4 Code Colo. Reg. 801–2, which provides:

> All persons appointed to any position in the State Personnel System must meet the minimum requirements of the class and position to which appointed.

■ From a review of these criteria, it is clear that the layoff and retention rules presume that employees to be retained possess minimum qualifications for their positions before any layoff is implemented. Thus, we conclude that the department is not required to verify the qualifications of all certified employees before implementing a layoff.

■ However, when, as here, a challenge is raised to the qualifications of employees who were retained in the layoff, that factor is properly determined before consideration of seniority and performance. State Personnel Board Rules 9–3–6 and 9–3–7, when read together, establish a procedure for retaining employees during a layoff, which includes keeping employees within a downsized class, and a mechanism for their job retention, including bumping into other positions. Because State Personnel Board Rule 9–3–7(G) requires an employee to have minimum qualifications to exercise retention rights, that requirement relates to both aspects of retention and must be considered prior to application of the seniority and performance matrix.

## II.

■ Next, the Department contends that the two challenged chaplains meet the minimum qualifications for their positions. It essentially contends that the determinations by the ALJ and the Board cannot be sustained because they are unsupported by substantial evidence. We disagree.

■ In reviewing the findings and conclusions of an agency on appeal, we must determine whether substantial evidence exists in the record to support them. *Life Investors Insurance Co. v. Smith,* 833 P.2d 864 (Colo.App.1992). "Substantial evidence" means more than some evidence in some particulars. It is probative evidence that would warrant a reasonable belief in the existence of facts supporting a particular finding. *Nicholas v. North Colorado Medical Center, Inc., supra.*

■ Under this standard, it is not the province of this court to measure the weight of the evidence or to resolve the credibility of witnesses. Whether there is substantial evidence to support an agency's decision is a question of law, and in resolving a question of law, a reviewing court must view the record in the light most favorable to the agency decision. *Nicholas v. North Colorado Medical Center, Inc., supra.*

Having reviewed the record in its entirety, we conclude that there is substantial evidence in the record to support the findings and conclusions of the ALJ and the Board on this issue. Consequently, we are bound to affirm them. *Stamm v. City & County of Denver,* 856 P.2d 54 (Colo.App.1993).

## III.

Finally, the department contends that it was error to award attorney fees in this case. It argues that the ALJ correctly found that there was no evidence to support an award of fees on any of the grounds set forth in § 24–50–125.5, C.R.S. (1988 Repl.Vol. 10B). We agree.

Section 24–50–125.5, C.R.S. (1988 Repl.Vol. 10B) provides in pertinent part:

> (1) Upon final resolution of any proceeding related to the provisions of this article, if it is found that the personnel action from which the proceeding arose or the appeal of such action was instituted frivolously, in bad faith, maliciously, or as a means of harassment or was otherwise groundless, the ... department ... taking such personnel action shall be liable for any attorney fees and other costs incurred by the employee. . . .

An administrative agency's determination of ultimate fact may be set aside on review if it is unsupported by any reasonable basis. *Electric Power Research Institute, Inc. v. City & County of Denver,* 737 P.2d 822 (Colo.1987). "Ultimate facts" are conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties. *Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982).

The Board may make its own determination as to ultimate facts and is not bound by the ALJ's findings, so long as the determination has a reasonable basis in law and is supported by substantial evidence in the record. *Renteria v. Department of Labor & Employment,* 907 P.2d 619 (Colo.App. 1994).

"Bad faith," as a basis for awarding attorney fees under the applicable statute, has been defined as including conduct which is arbitrary, vexatious, abusive, or stubbornly litigious. It may also include conduct aimed at unwarranted delay or disrespectful of truth or accuracy. *Mayberry v. University of Colorado,* 737 P.2d 427 (Colo.App.1987).

Here, the Board found as an ultimate fact that the DOC's actions were taken in bad faith. This determination was based upon three factual findings:

1. DOC knew, prior to the time that it took the action with respect to Halverstadt's position, that [the two retained chaplains] did not meet the minimum qualifications for the position of chaplain.
2. DOC chose to ignore the fact that [the two retained chaplains] did not meet the minimum qualifications for the position of chaplain.
3. DOC laid off Halverstadt, who met the minimum qualifications for the position of chaplain, while retaining in that position the two persons . . . who did not meet such minimum qualifications.

While these factual findings are supported by the record, the conclusion of ultimate fact ignores the reason that DOC took these actions. DOC has consistently acknowledged its actions, but has predicated those actions upon its interpretation of the State Personnel Rules at issue here, together with its interpretation of several additional statutes which, it contends, were applicable.

As noted above, DOC contended that Personnel Board Rule 9–3–7(G) should be interpreted to apply only to those situations wherein one employee was exercising retention rights over another employee; *i.e.,* when one employee is entitled to "bump" another. Such an interpretation, while not the one the ALJ adopted, had a reasonable basis.

Moreover, DOC argued that the General Assembly's repeal of mandatory retirement laws for state government employees indicated an intent that age, a factor at issue here concerning one of the retained chaplains, should not be considered. Again, such an interpretation has a reasonable basis.

Finally, DOC asserted that § 24–50–112(3)(b), C.R.S. (1988 Repl.Vol. 10B) mandated that state government applicants "shall not be rejected solely because they do not have the education required in the class specifications. . . . Where education is not a prerequisite or a federal mandate, applicants' experience shall be considered." Again, one of the retained chaplains did not have a Master of Divinity degree, a job specification; however, the specification also referred to experience as being an acceptable substitute, under some circumstances, for the educational specification.

Consequently, DOC took the actions at issue because of its interpretation of the personnel rules and the above statutes. Because there is an adequate basis in the evidence and the law to support DOC's actions, they cannot be said to have been taken in bad faith. Thus, because the ultimate finding of fact does not, under these circumstances, have a reasonable basis in law, we set aside the Board's order awarding complainant his attorney fees and costs.

The order concluding that the layoff of complainant was contrary to law is upheld. The order awarding complainant his attorney fees and costs is set aside, and the cause is

remanded for further proceedings consistent with this opinion.

CRISWELL and JONES, JJ., concur.