**COLORADO STATE BOARD OF MEDICAL EXAMINERS, Petitioner–Appellee,**

v.

**Lloyd G. THOMPSON, M.D., Respondent–Appellant.**

**No. 95CA1515.**

Colorado Court of Appeals, Div. I.

Nov. 14, 1996.

Rehearing Denied Jan. 16, 1997.

Certiorari Denied Oct. 20, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Robert N. Spencer, Assistant Attorney General, Denver, for Petitioner–Appellee.

Law Offices of Richard G. McManus, Jr., P.C., Richard G. McManus, Jr., Denver, for Respondent–Appellant.

Opinion by Judge METZGER.

Respondent, Lloyd G. Thompson, M.D., appeals a final order of the Colorado State Board of Medical Examiners (the Board) suspending his license to practice medicine for two years and placing his license on probation for five years upon reinstatement. We affirm.

Respondent's practice is limited to the medical treatment of overweight and obese patients. In Texas, where he has practiced for 20 years, respondent owns and operates several weight-loss clinics. Although he has been licensed to practice medicine in Colorado since 1971, respondent has never practiced in this state and has no plans to do so in the future.

Sometime between 1990 and 1992, a complaint was filed against respondent with the Texas State Board of Medical Examiners (Texas Board). This complaint was prompted, in part, by advertisements he had placed

in Texas newspapers promoting the use of Fluoxetine (Prozac) for weight loss. They read in pertinent part:

Fluoxetine Helps Overweight People Think of Food Less

Many overweight people are now being helped with both weight loss and maintenance of ideal weight with Fluoxetine. . . .

I have been so impressed by working with several hundred patients, that I now feel every overweight person should be given a trial for three weeks on this very safe medication. In many it will be a great help to complete the successful treatment of their overweight problem.

After he received a letter from the Regional Director of the Federal Drug Administration questioning the content of the advertisements, respondent voluntarily withdrew them.

Also before the Texas Board were several patient complaints regarding respondent's patient management. As a result, in June 1992, respondent entered into an "Agreed Order" (the Texas order) with the Texas Board which addressed both issues and imposed on him a public reprimand.

Although respondent did not report the Texas order, the Board became aware of it and filed a formal complaint against him. The complaint charged respondent with three violations of the Colorado Medical Practice Act (MPA), § 12–36–101, et seq., C.R.S. (1991 Repl.Vol. 5B), all arising from the events which had led to the Texas order. Specifically, the Board alleged that respondent had committed two or more acts of substandard medical practice in violation of § 12–36–117(1)(p), C.R.S. (1991 Repl.Vol. 5B), had failed to report the Texas order in violation of § 12–36–117(1)(y), C.R.S. (1991 Repl.Vol. 5B), and had committed acts of misleading, deceptive, and false advertising in violation of the provision now codified as § 12–36–117(1)(hh), C.R.S. (1996 Cum.Supp.).

A number of procedural issues were addressed before the evidentiary hearing was held on the Board's complaint. Following respondent's failure to answer its request for admissions, the Board moved for summary judgment, arguing that the facts contained in its request for admissions were deemed admitted pursuant to C.R.C.P. 36(b). This motion was denied, as was respondent's motion for a continuance. However, the Board's request to allow some witnesses to testify by telephone was granted.

The Administrative Law Judge (ALJ) found that respondent had violated the pertinent provisions of the MPA and recommended that his license be suspended for two years and that reinstatement be conditioned on completion of various continuing education requirements.

Both parties filed exceptions to the ALJ's initial decision. The Board, in its final order, adopted many of the findings and conclusions of the ALJ, adopted several of the exceptions filed by the inquiry panel, and entered the order which is the subject of this appeal.

## I.

First, respondent contends that the ALJ and, thus, the Board, through its adoption of the ALJ's findings and conclusions, committed several procedural errors. We disagree.

## A.

■ Initially, respondent asserts that the ALJ abused her discretion in denying his motion for a continuance. However, in our view, this argument has been waived.

■ An appeal from an initial decision by an ALJ is triggered by filing exceptions with the agency within a set period of time, thereby allowing the agency "the opportunity to correct any alleged errors without the necessity of judicial review." *See North Washington Street Water & Sanitation District v. Emerson,* 626 P.2d 1152, 1154 (Colo.App. 1980). Consistent with this framework, § 24–4–105(14)(c), C.R.S. (1996 Cum.Supp.) provides:

Failure to file the exceptions prescribed in this subsection (14) shall result in a waiver of the right to judicial review of the final order of such agency, unless that portion of such order subject to exception is different from the content of the initial decision.

Here, respondent filed numerous exceptions to the ALJ's decision with the Board.

However, since these exceptions did not mention the ALJ's ruling on respondent's motion for a continuance, we conclude that he has waived any contention of error in the denial of the request for continuance.

### B.

■ Next, respondent contends that the ALJ erred in granting the Board's request to take the testimony of witnesses by telephone. He argues that receiving their testimony in this manner interfered with determinations of the witnesses' demeanor and credibility which, in turn, denied him a fair hearing. We disagree.

Section 24–4–105(4), C.R.S. (1996 Cum. Supp.) grants the ALJ authority to regulate the manner in which evidence is to be received at an administrative hearing. Department of Administration, Division of Administrative Hearings Rule 26, 1 Code Colo. Reg. 104–1, allows testimony to be taken by telephone in the ALJ's discretion "upon a showing of good cause." In making this determination, the ALJ may consider the nature and duration of the expected testimony, the significance of the witness' demeanor and credibility, and the cost and hardship to the witness of testifying in person. See Department of Administration, Division of Administrative Hearings Rule 26.C., 1 Code Colo. Reg. 104–1.

Here, in the exercise of her discretion, the ALJ determined that good cause existed to permit telephone testimony. She cited many of the precise "considerations" set forth in Rule 26.C., specifically, the limited testimony to be given by the witnesses, the absence of reference in their testimony to exhibits or to demonstrative evidence, and the inconvenience and expense to procure their live testimony.

We conclude the ALJ did not abuse her discretion in determining that good cause existed under the circumstances here to grant the Board's motion to take telephone testimony.

### II.

Respondent next contends that the Board erred in adopting the ALJ's conclusions that he had violated the MPA. Again, we disagree.

### A.

■ First, respondent argues that the Board erred in concluding he had engaged in advertising which was misleading, deceptive, or false. At the time relevant to this appeal, "unprofessional conduct" included advertising which is misleading, deceptive or false.

Respondent argues that, because his advertisements included statements of opinion rather than facts, they cannot be the basis for a violation of the statutory provision. Moreover, he contends, there was no evidence that he intended to mislead or to deceive the public. We reject these arguments.

Statements of fact, unlike statements of opinion, imply that "the maker [of the statement] has definite knowledge or information which justifies the positive assertion." Restatement (Second) of Torts § 538A comment b (1976).

Here, respondent's advertisement specifically stated that Prozac is a "very safe medication" and that "every overweight person should be given a trial for three weeks." These positive statements indicated that respondent had definite knowledge or information regarding Prozac and weight loss. Thus, we conclude that respondent's assertion, that the statements could not be construed other than as his belief or as his opinion on the use of Prozac in the treatment of obesity, is not well taken.

■ In addition, the Board concluded, and we agree, that there is no indication that the General Assembly considered "intent to mislead or deceive" to be a necessary element of false, deceptive, or misleading advertising. No such consideration is revealed in the words of the statute nor would it be consistent with the declared purpose of the MPA to regulate and control the practice of medicine to protect the public. See § 12–36–102(1), C.R.S. (1996 Cum.Supp.).

As well, we note that the omission of the element of intent to deceive or mislead is consistent with other public protection statutes designed to proscribe deceptive adver-

tising, labeling, or trade practices. *See generally*, § 6–1–105(1), C.R.S. (1992 Repl.Vol. 2) (deceptive trade practices under the Colorado Consumer Protection Act); *Federal Trade Commission v. Patriot Alcohol Testers, Inc.*, 798 F.Supp. 851 (D.Mass.1992); *Fortner v. Fannin Bank in Windom*, 634 S.W.2d 74 (Tex.App.1982) (deceptive trade practices); *Canady v. Mann*, 107 N.C.App. 252, 419 S.E.2d 597 (1992) (unfair and deceptive trade practices).

There is no question that the language of the advertisements evidenced an intent to communicate the information they contained. *See Colorado State Board of Medical Examiners v. Davis*, 893 P.2d 1365 (Colo.App. 1995). Consequently, we conclude that the Board did not err in determining that respondent's advertisement constituted misleading, deceptive, or false advertising in violation of the MPA.

## B.

■ Next, respondent argues that the Board erred in concluding that he failed to meet generally accepted standards of medical practice in violation of § 12–36–117(1)(p), C.R.S. (1996 Cum.Supp.). We disagree.

Section 12–36–117(1)(p), in effect at the time pertinent to this appeal, defined unprofessional conduct to include:

[T]wo or more acts or omissions which fail to meet generally accepted standards of medical practice, whether the two or more acts or omissions occur during a single treatment of one patient, during the course of treatment of one patient, or during the treatment of more than one patient.

The essence of respondent's argument is that advertising is incidental to the practice of medicine and, thus, it cannot be considered one of the two acts necessary to constitute a violation of § 12–36–117(1)(p). We do not agree.

The practice of medicine includes "holding out" oneself to the public as being able to treat and prescribe for any physical or mental condition and "suggesting" or "recommending" treatment for the relief or cure of any such condition. *See* §§ 12–36–106(1)(a)

and 12–36–106(1)(b), C.R.S. (1991 Repl.Vol. 5B).

Respondent's advertising holds him out as one capable of treating the medical condition of obesity and recommends Prozac to all potential patients as a form of treatment for that condition. And, as the ALJ found with ample record support:

Generally accepted standards of practice preclude a physician from recommending a trial of Prozac for all overweight persons when he has not evaluated them. This is based on the significant probability that such persons will have a contraindication to Prozac. By advertising that he recommended a three-week trial of Prozac for every overweight person, Respondent violated these generally accepted standards of practice.

Thus, we conclude respondent's advertising falls within the definition of the practice of medicine.

## C.

■ Respondent further asserts that, when the record is considered as a whole, the findings and conclusions of substandard medical practice are unsupported by substantial evidence. Specifically, he argues that, because credibility of the witnesses played a role in the ALJ's resolution of conflicting evidence, and because the ALJ did not have the opportunity to view their demeanor, the evidence forming the foundation for his discipline cannot be deemed substantial. We disagree.

■ We must review the record in a light most favorable to the administrative decision and should give deference to the weight and credibility determinations of the Board. *Halverstadt v. Department of Corrections*, 911 P.2d 654 (Colo.App.1995).

While live testimony is always preferred, we do not consider the ALJ's conclusions here as being so unsupported as to be without a sufficient basis in the record.

Additionally, the evidence is uncontradicted that the physician-patient relationships with two patients were terminated in the presence of others, and that the relatively public nature of these terminations violated the proper standard of care. Moreover, the

evidence is uncontradicted that respondent did not attempt to secure follow-up care for either patient, and thus violated the proper standard of care. These facts, which did not rest on credibility determinations, amply support the conclusion that respondent engaged in substandard medical practice.

Accordingly, we will not disturb the order on appeal. *See Halverstadt v. Department of Corrections, supra.*

### III.

■ Finally, respondent contends that the Board erred in imposing a punishment different from that imposed by the Texas Board when the conduct being considered in each disciplinary action was essentially the same. We disagree.

Contrary to respondent's contention, the Board is not bound by the discipline imposed by the Texas Board. There is no provision in the MPA which addresses reciprocal discipline. Section 12–36–118(5)(g)(III), C.R.S. (1991 Repl.Vol. 5B) grants the Board wide discretion in its determination of the appropriate sanction for unprofessional conduct.

As respondent correctly points out, C.R.C.P. 241.17(d) calls for imposition of the same discipline against an attorney as that imposed in another jurisdiction unless one of four listed exceptions has been established. However, in the absence of legislative authority, we decline to apply the provisions of that rule to physicians.

The promulgation of C.R.C.P. 241.17 by the supreme court reflects the exercise of its jurisdiction "in all matters relating to the practice of law." C.R.C.P. 241.1(b). The General Assembly has the authority to control the practice of medicine. *Smith v. People,* 51 Colo. 270, 117 P. 612 (1911). Accordingly, in the absence of a legislative declaration concerning reciprocal discipline, we will not limit the powers of the Board by engrafting procedures relating to another, entirely separate, profession.

The order of the Board is affirmed.

CRISWELL and JONES, JJ., concur