Roxanna HARRIS, Complainant–
Appellant,

v.

STATE BOARD OF AGRICULTURE,
Fort Lewis College, Respondent–
Appellee,

and

State Personnel Board, Appellee.

No. 97CA1459.

Colorado Court of Appeals,
Div. II.

Oct. 15, 1998.

K. Kane Graves, Bayfield, for Complainant–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Robin R. Rossenfeld, Assistant Attorney General, Brent A. Eisen, Special Assistant Attorney General, Denver, for Respondent–Appellee.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Mary S. McClatchey, Assistant Attorney General, Denver, for Appellee.

Opinion by Judge CRISWELL.

Roxanna Harris (complainant) appeals from the decision of the State Personnel Board (Board) that upheld her termination as an employee of Fort Lewis College (FLC), an institution governed by the State Board of Agriculture. We affirm.

Prior to the events giving rise to this controversy, complainant was a certified state employee in the security office of FLC. She acted as a dispatcher and was regularly in contact with local law enforcement agencies.

In May 1994, complainant was on the scene when law enforcement agents conducted a drug "bust." She was later arrested and charged with possession of a controlled substance. Several days later, complainant signed a letter of resignation from her job with FLC under circumstances that form the basis of the dispute before us.

Initially, the Board approved the grant by the Administrative Law Judge (ALJ) of a summary judgment for FLC, but a division of this court concluded that there existed a genuine question of fact, based upon a pre-hearing affidavit submitted by complainant, as to whether her resignation was the result of coercion, harassment, or similar conduct representative of a constructive discharge. The cause was, therefore, remanded to the Board to conduct an evidentiary hearing upon this issue. *See Harris v. State Board of Agriculture,* (Colo.App. No. 95CA0579, June 6, 1996) (not selected for official publication).

Upon remand, a full hearing was held before the ALJ. Based on the evidence produced, the ALJ found that it was complainant, and not the appointing authority or any other supervisor, who first raised the prospect of her resignation; that she was not presented with the choice either of resigning or of being involuntarily terminated; and that she was not otherwise prodded into resigning. The ALJ also found that complainant had no right to require FLC to allow her to withdraw her resignation and that its refusal to do so was not improper.

The Board, with one member dissenting, adopted the ALJ's findings and conclusions, and complainant now appeals from that order.

I.

Complainant first argues that the notice she was given of the predisciplinary meeting under State Personnel Board Rule R8–3–3, 4 Colo.Code Reg. 801–1, and of her immediate suspension with pay was inadequate because it was hand-delivered, despite the fact that the post-disciplinary notice described in §24–50–125(2), C.R.S.1998, is required to be sent by certified mail. We reject this argument.

We note, first, that this contention was not presented either to the ALJ or to the Board. Nevertheless, because it bears some relationship, both factually and analytically, to con-

tentions that were presented to the agency, we elect to address it in this instance.

State Personnel Board Rule R8–3–3 requires an appointing authority to meet with an employee against whom discipline is being contemplated and to allow that employee to contest the basis for any discipline or to present matters in mitigation before making any final decision as to whether discipline should be imposed. It also provides that, if discipline is imposed after that meeting, the employee must be given notice of that decision and of the specific charges upon which the disciplinary action is taken. *See Department of Institutions v. Kinchen,* 886 P.2d 700 (Colo.1994).

The statute referred to by complainant, §24–50–125(2), does not apply to the notice of the R8–3–3 meeting; instead, it governs the procedure to be followed *after* that meeting and *after* the appointing authority has decided that discipline in some form is appropriate. Section 24–50–125(2) requires the employee to be given written notice of such disciplinary action by certified mail. It also requires that a copy of that notice be sent to the Board. The purpose of the statute, among others, is to record the date that the employee was notified of the disciplinary action and, thus, to establish when the time for appealing such action to the Board pursuant to §24–50–125(3), C.R.S.1998, starts to run.

Here, in contrast, there was never any discipline imposed upon complainant. Rather, the period of paid suspension imposed upon her was authorized by State Personnel Board Rule R8–3–4(c), 4 Code Colo. Reg. 801–1, which allows an appointing authority to place an employee on "administrative suspension":

> during the period of investigation of his conduct when there is reason to believe that his conduct may endanger the safety or welfare of the public....

We disagree with complainant that the further directives in the letter notifying her of her suspension, *i.e.,* that she should turn in her keys and stay away from the campus, constituted disciplinary action. Disciplinary action is action that "adversely affect[s] the current base pay, status, or tenure of the employee." State Personnel Board Rule R8–

3–3(A), 4 Code Colo. Reg. 801–1; *see Department of Institutions v. Kinchen, supra.* The directives here, on the other hand, had no effect upon complaint's pay, status, or tenure; they were, rather, simply means used to implement her administrative suspension, pending the R8–3–3 meeting and the appointing authority's decision whether she was to be disciplined.

Complainant has not contested the validity of her paid suspension that was imposed in accordance with that rule. Likewise, she has not contended that any statute or rule dictates the form that the notice of the R8–3–3 meeting or of an administrative suspension under R8–3–4(c) must take or the manner in which such notice must be given.

Here, then, the imposition of an administrative suspension under R8–3–4(c) did not constitute any discipline, and §24–50–125(2) has no application to the notice given to her.

## II.

Relying upon *Department of Institutions v. Kinchen, supra,* complainant next argues that the ALJ improperly imposed upon her the burden of establishing that her resignation was given and accepted under circumstances that amounted to her constructive discharge, rather than requiring FLC to establish that her resignation was voluntary. We disagree.

In *Department of Institutions v. Kinchen, supra,* an employee of the Division for Developmental Disabilities was terminated, based upon allegations made by an undercover agent that he had physically abused certain persons who had been placed in his care. Upon his appeal of this termination, the ALJ imposed upon the department the burden of proving that the facts supported the appointing authority's actions. After an evidentiary hearing, the ALJ determined that the undercover agent was not credible and, consequently, that the appointing authority had failed to prove that cause existed for the employee's termination.

On appeal to the courts, the department argued that the ALJ erred in imposing the burden of proof upon the appointing authori-

ty, noting that, under §24–50–125(3), C.R.S. 1998, it is the disciplined employee that commences a review of the appointing authority's decision and that, under §24–4–205(7), C.R.S. 1998, the Administrative Procedure Act imposes the burden of proof in administrative adjudicatory proceedings upon "the proponent of an order." Since the disciplined employee was seeking an order rescinding the appointing authority's action, the department in *Kinchen* argued that the employee was the "proponent" under this statute. Both a panel of this court in *Kinchen v. Department of Institutions,* 867 P.2d 8 (Colo.App.1993), and the supreme court rejected this analysis and held that the ALJ properly placed the burden of proof upon the appointing authority.

■ However, the issue as cast and determined by the supreme court in *Kinchen* was a relatively narrow one. Contrary to complainant's assertion, it did not hold that, in a proceeding properly characterized as involving the discipline of an employee, the appointing authority has the burden of proof with respect to *all* issues that might arise. Rather, the *Kinchen* decision was limited to determining that the appointing authority has "the burden of proof as to the *factual basis* for the disciplinary action," *i.e.,* "whether misconduct occurred." *Department of Institutions v. Kinchen, supra,* 886 P.2d at 702 and 704 (emphasis supplied).

While the supreme court gave several reasons for its conclusion in this respect, one of the principal factors relied upon by it was the constitutional limitation that a certified state employee may be disciplined only "upon written findings" of specified misconduct. Colo. Const. art. XII §13(8).

But, aside from this underlying issue whether the disciplinary action has factual support, the factfinder in a disciplinary proceeding may be called upon to resolve other disputed issues, such as those presented by an assertion that the appointing authority has not complied with various procedural requirements. *See Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984); *Shumate v. State Personnel Board,* 34 Colo.App. 393, 528 P.2d 404 (1974). *Kinchen* does not purport to determine which party has the burden of proof with respect to these other issues.

Here, the question presented to the factfinder was whether complainant's termination was voluntary or involuntary. That issue was neither presented to nor decided by *Kinchen* court, and indeed, it is one that no Colorado appellate court has yet addressed.

However, the pertinent constitutional and statutory protections and procedures are applicable only to involuntary employment terminations; they are not implicated by a voluntary resignation. The burden of demonstrating the applicability of those protections and procedures, therefore, should logically be placed upon that party who is relying upon their applicability.

Further, as the court in *Kinchen* noted, if an employee asserts that a private employer has improperly discharged that employee, the courts have placed the burden of establishing just cause for the employee's discharge upon the employer. *See Western Distributing Co. v. Diodosio,* 841 P.2d 1053 (Colo.1992); *Pittman v. Larson Distributing Co.,* 724 P.2d 1379 (Colo.App.1986). *Kinchen's* placement of the burden with respect to this issue in the case of the discipline of a certified state employee was, therefore, consistent with this prior jurisprudence.

■ At the same time, however, in those instances in which an employee relies upon the precepts of a constructive discharge to assert a wrongful discharge claim before the courts, that employee bears the burden of establishing that his or her termination amounted to a discharge. And, this burden has been allocated to the employee whether the employer is a private concern or a local government. *See Boulder Valley School District R–2 v. Price,* 805 P.2d 1085 (Colo. 1991); *Wilson v. Board of County Commissioners,* 703 P.2d 1257 (Colo.1985); *Christie v. San Miguel County School District R–2(J),* 759 P.2d 779 (Colo.App.1988). *See generally CJI–Civ. 3rd* 31:1; 31:3; 31:4; and 31:8 (1998 Cum.Supp.).

Moreover, none of the factors considered by the supreme court in *Kinchen,* which were important in determining the placement

of the burden of proof with respect to the existence of just cause, are implicated if, as here, the issue is whether the employee has, in fact, been disciplined. As noted, unless the employee's termination was involuntary, the pertinent constitutional limitations are inapplicable, and none of the statutory procedures and requirements applicable to the imposition of discipline could apply. Likewise, requiring the employee to prove that he or she was constructively discharged does not require proof of a negative, and requiring the employee to make such proof is consistent, not inconsistent, with the placement of the burden when the issue has been considered by the courts in similar, but different, contexts.

■ We conclude, therefore, that, in the case of a dispute as to whether a certified state employee's termination was involuntary, the burden is upon the employee to prove the affirmative of that proposition. If the employee prevails upon that issue, then, under *Kinchen*, it will be the appointing authority's burden to prove that the termination imposed was justified by the factual circumstances.

Here, the parties stipulated that no issue was presented as to whether complainant could properly have been disciplined. They agreed that the sole issue to be decided by the ALJ was whether complainant had been constructively discharged. Hence, the ALJ properly determined that complainant bore the burden of proof upon this issue.

### III.

■ Complainant next contends that the ALJ's determination that she had not been constructively discharged is not supported by the record. We disagree.

While there were some conflicts in the evidence, the ALJ determined credibility issues against complainant, and we are bound by that determination. *State Board of Medical Examiners v. Thompson*, 944 P.2d 547 (Colo.App.1996).

Here, it was complainant, and not any supervisor, who first initiated a discussion about her resignation. Likewise, it was complainant who read a prepared statement at the R8–3–3 meeting, acknowledging that she should not continue to work in the security office, asking to be transferred to another job with FLC, but stating that, if no other job were available, she would resign. When told that no other job was available, she offered to sign a written resignation and requested that steps be taken to have the funds in her PERA account delivered to her as soon as possible.

If is, of course, undisputed that, in response to a specific inquiry by complainant, a supervisor told her the evening before the R8–3–3 meeting that she might "consider" resigning. This evidence, however, does not establish, as a matter of law, that complainant's resignation was coerced. The ALJ was entitled to consider that evidence in the context of all of the other evidence in determining whether her resignation was voluntary.

The ALJ found that, whatever subjective belief complainant might have entertained with respect to her continued employment prospects, neither the appointing authority nor any supervisor did anything to lead her to believe that her only option was to resign. He found, instead, that complainant voluntarily introduced the subject of her resignation at the R8–3–3 meeting and that she was neither threatened nor prodded with respect to the subject. The ALJ found that complainant knowingly and voluntarily submitted her resignation and that it was only later that she had "changed her mind."

These findings are supported by the evidence and by reasonable inferences that the ALJ was entitled to draw.

### IV.

■ Complainant finally argues that the ALJ erred in determining that she had no right to withdraw her resignation and that the appointing authority acted arbitrarily in refusing to allow that withdrawal. Again, we disagree.

First, no rule gave complainant the right to withdraw her resignation.

State Personnel Board Rule R9–1–1, 4 Code Colo. Reg. 801–1, allows an employee to resign by giving written notice of that resig-

nation "at least 10 working days prior to the date the resignation is to be effective." However, that rule also provides that:

Less written notice may be accepted if the employee and appointing authority mutually agree.

State Personnel Board Rule R–9–1–2, 4 Code Colo. Reg. 801–1, then, allows a resignation to be withdrawn "at any time *prior* to 7 full working days before the set resignation date." (emphasis supplied)

We agree with the ALJ that the latter rule contemplates that the resignation is to be submitted more than 10 working days before its effective date. However, if, as here, the parties agree under R9–1–1 that "less written notice" is to be given, so that the resignation becomes effective in less than seven working days after it is submitted, that agreement renders inapplicable the right to withdraw the resignation under R9–1–2.

The ALJ found, with record support, that complainant voluntarily agreed to make her resignation effective immediately so that she could begin to process her request for payment of the funds in her PERA account. Hence, such agreement effectively waived any right she might have had under R9–1–2 to withdraw her resignation.

Further, even if we were to assume that an appointing authority has the right to allow the withdrawal of a resignation that has already become effective, the ALJ here found that the refusal to allow the withdrawal was within the discretion of the appointing authority. Given the voluntary nature of complainant's resignation, the circumstances leading to that resignation, and the inapplicability of R9–1–2, that determination also has record support.

The Board's order is affirmed.

CASEBOLT and VOGT, JJ., concur.