**Barry RICE and Dan Wells, Petitioners–Appellants,**

v.

**AURARIA HIGHER EDUCATION CENTER, Respondent– Appellee,**

and

**Colorado State Personnel Board, Appellee.**

No. 04CA0086.

Colorado Court of Appeals, Div. I.

June 16, 2005.

Rehearing Denied Aug. 18, 2005.

Certiorari Denied April 3, 2006.*

* Justice EID does not participate.

Nora V. Kelly, P.C., Nora V. Kelly, Denver, Colorado, for Petitioner–Appellant Barry Rice.

Antonio Bates Bernard, P.C., Howard M. Haenel, Sandra A. Lilley, Denver, Colorado, for Petitioner–Appellant Dan Wells.

John W. Suthers, Attorney General, Melanie Ann Sedlak, Assistant Attorney General (On the Answer Brief), John A. Lizza, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee.

No Appearance for Appellee.

Opinion by Judge MARQUEZ.

Petitioners, Barry Rice and Dan Wells, both of whom were laid off from their employment as certified state employees of the University of Colorado at Denver (UCD) Media Center, appeal the decision of the State Personnel Board (Personnel Board) concluding that the actions of respondent Auraria Higher Education Center (AHEC) were not arbitrary, capricious, or contrary to law. We affirm the order regarding Wells, reverse the order regarding Rice, and remand.

The background facts here are substantially undisputed. AHEC is a distinct entity created by statute. AHEC's board of directors (Auraria Board) oversees the land, physical plant, and facilities for UCD, Community College of Denver, and Metropolitan State College of Denver (collectively, Constituent Institutions), which all share the same campus.

The UCD Media Center maintained the Auraria campus's audiovisual equipment, trained faculty in the use of that equipment, and provided support to over 200 classrooms in which media equipment was installed. From 1981 until April 2002, the Media Center was administered by UCD and operated as part of the Auraria Library.

Wells worked as a Media Specialist I in the UCD Media Center for approximately twenty-one years. Rice began working at UCD in 1998 as a Telecommunications/Electronic Specialist II in the UCD Media Center. That both had excellent employment records is undisputed.

In 2001, a committee recommended that all the Media Center's functions be transferred from UCD to AHEC.

During a meeting on February 28, 2002, all the Media Center employees were given written notice that they were laid off effective April 14, 2002, because of lack of funds and lack of work. The layoff notices state, "This letter is your 45–day advance notification before the layoff becomes effective and your official notification of retention rights with the University of Colorado at Denver."

Classified positions for the AHEC Media Center were posted as transfer notices. Copies of those transfer notices and the position description questionnaires (PDQs) were distributed to the employees at the layoff meeting. The transfer notices provided, "To be considered for this position your application must be received ... no later than 5:00 p.m. on ... March 8, 2002." UCD's human resources manager also gave the employees blank notices of intention to exercise retention rights for the employees to complete and return if they wished to exercise their retention rights with UCD. Wells signed a notice of intention to exercise his retention rights, but Rice did not. Rice filed an application for transfer to AHEC, but Wells did not.

In March 2002, the Auraria Board approved a memorandum of understanding (MOU) that transferred the Media Center operations to AHEC. The Constituent Institutions and AHEC executed the MOU. Under the organizational plan for the AHEC Media Center, its director was exempt, and the remaining fourteen positions were classified. Two classified positions were Media Specialist I (Wells's classification), and two were Telecommunications/ Electronic Specialist II (Rice's classification).

The AHEC positions did not require any qualifications in addition to those required for the UCD positions, and none of the personnel files of the UCD Media Center's employees was reviewed during AHEC's application and hiring process. The hiring group considered the talent and skills of the employees as a major factor. However, the group did not consider seniority or prior performance evaluations, and all hiring decisions were made without regard to retention rights.

Also in March 2002, AHEC gave written job offer letters to fourteen of the laid off UCD Media Center employees. Rice and Wells, however, were not transferred to classified positions within the AHEC Media Center. The employees who were transferred to the AHEC Media Center suffered no effect on their seniority rights or benefits, and they brought their annual leave and sick leave with them. All but one of these employees maintained the same salary. Thus, the four-teen AHEC Media employees were not considered new state employees.

On March 8, 2002, before hiring decisions for the AHEC positions had been made, Rice and Wells filed separate appeals to the Personnel Board regarding termination of their employment. After AHEC began administering the Media Center, Rice joined AHEC as an indispensable party to the appeal. The Personnel Board's director then referred Rice's claim to the Division of Administrative Hearings. The administrative law judge (ALJ) consolidated the cases.

The ALJ issued the initial decision in June 2003, concluding that (1) UCD's actions were not arbitrary, capricious, or contrary to rule of law; (2) AHEC's actions regarding Wells were not arbitrary, capricious, and contrary to rule or law; (3) AHEC's actions regarding Rice were arbitrary, capricious, or contrary to rule of law; and (4) attorney fees were not warranted. AHEC appealed this decision to the Personnel Board.

The Personnel Board adopted the ALJ's findings of fact and conclusions of law regarding Wells and reversed the ALJ's conclusions of law regarding Rice. This appeal followed.

## I. Standard of Review

■ The Personnel Board may reverse or modify an administrative action by an appointing authority if the action was arbitrary, capricious, or contrary to rule or law. Section 24-50-103(6), C.R.S.2004. The Personnel Board's actions are governed by the State Administrative Procedure Act, § 24-4-101, et seq., C.R.S.2004. Accordingly, § 24-4-105(15)(b), C.R.S.2004, provides the appropriate scope of the Personnel Board's review of an ALJ's decision. *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239 (Colo.2001).

■ The Personnel Board's authority to review and set aside an ALJ's finding depends on whether the finding is one of evidentiary fact or ultimate fact. Evidentiary facts generally include the detailed factual or historical findings on which a legal determination rests. Ultimate conclusions of fact involve conclusions of law, or at least mixed questions of law and fact, and often settle the

rights and liabilities of the parties. On review, the Personnel Board may not set aside an evidentiary finding of fact made by an ALJ unless it is contrary to the weight of the evidence. However, the Personnel Board may substitute its own judgment for the ALJ's ultimate conclusion of fact as long as the Personnel Board's finding has a reasonable basis in the law. *Lawley v. Dep't of Higher Educ., supra; Koinis v. Colo. Dep't of Pub. Safety*, 97 P.3d 193, 195 (Colo.App. 2003).

■ On appeal, a court may reverse the decision of an administrative agency if the court finds that the agency acted arbitrarily or capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority. The court determines all questions of law, interprets the statutory and constitutional provisions involved, and applies such interpretation to the facts duly found or established. Section 24–4–106(7), C.R.S.2004; *Lawley v. Dep't of Higher Educ., supra; Koinis v. Colo. Dep't of Pub. Safety, supra.*

■ Capricious or arbitrary exercise of discretion by an administrative board can arise in only three ways, namely: (1) by neglecting or refusing to use reasonable diligence and care to procure such evidence as it is by law authorized to consider in exercising the discretion vested in it; (2) by failing to give candid and honest consideration to evidence before it on which it is authorized to act; or (3) by exercising its discretion in such a manner as to indicate clearly that its action is based on conclusions from the evidence which reasonable persons fairly and honestly considering the evidence could not reach. *Lawley v. Dep't of Higher Educ., supra*, 36 P.3d at 1252.

## II. State Personnel System

The Colorado Civil Service Amendment, Colo. Const. art. XII, § 13, establishes the state personnel system. *Dep't of Human Servs. v. May*, 1 P.3d 159 (Colo.2000). It provides that "[p]ersons in the personnel system of the state shall hold their respective positions during efficient service or until reaching retirement age, as provided by law." Colo. Const. art. XII, § 13(8). The state personnel system is defined by § 24–50–101, et seq., C.R.S.2004.

Under § 24–50–124(1), C.R.S.2004, when certified employees are separated from state service because of lack of work, lack of funds, or reorganization, they shall be separated according to procedures established by Personnel Board rules. Such procedures must require that consideration be given to "performance evaluations" and "seniority within the total state service." Section 24–50–124(1), C.R.S.2004.

Personnel Board rules apply to any reduction in force that results in the elimination of one or more positions, regardless of the reason for the layoff. Under Personnel Board rules, layoff decisions must include seniority and performance factors. To mitigate a potential effect on the diversity of the work force, departments are encouraged to consider other factors. Dep't of Personnel (DOP) Reg. No. 7–8, 4 Code Colo. Regs. 801 (formerly DOP Reg. No. 7–4).

Following a separation from service, a certified employee has retention rights within the principal department. Section 24–50–124(1); DOP Reg. No. 7–12. In determining priorities for layoff and retention rights, time bands for each affected class are established for three-year periods based on seniority. Employees in the most junior time band must be displaced first. DOP Reg. No. 7–13.

However, the parties concede, and we agree, that neither the statutes nor the Personnel Board rules address the precise circumstances involved here.

## III. Rice

■ Rice contends that the Board's decision to set aside the ALJ's decision was arbitrary and capricious because state employees have tenure rights in their positions, which must be considered when new positions are created that are substantially similar to old positions. We agree.

Here, the ALJ made findings of fact that were adopted by the Board. The ALJ found, inter alia, that (1) AHEC created the PDQs for the fourteen AHEC classified positions; (2) the AHEC classified positions were post-

ed as transfer notices with an application deadline of March 8, 2002, and copies of the transfer notices were delivered to the Media Center employees at the February 28, 2002 layoff meeting; (3) Rice applied for two positions at the AHEC Media Center; (4) AHEC interviewed the applicants who were chosen to fill these positions, and Rice was not contacted or interviewed; (5) the AHEC Media Center gave written job offers to fourteen of the laid off UCD Media Center employees; (6) AHEC did not review personnel files of UCD Media Center employees and did not consider applicants' seniority or prior performance, and all hiring decisions were made without regard to retention rights; (7) none of the positions at the AHEC Media Center required any qualifications in addition to those required for the UCD positions; and (8) the Media Center and its functions, responsibilities, and services had not changed.

The Personnel Board's order states only that it voted to "adopt the findings of fact and Conclusions of Law 1, 2, and 4, in the Initial Decision of the [ALJ], but to reverse the ALJ on Conclusion of Law 3." Conclusion of Law 3 states that AHEC's "actions, with regards to Rice, were arbitrary, capricious, or contrary to rule or law." The Board's order provides no statement of support or reasoning for this determination.

The determination that AHEC's actions were arbitrary and capricious constitutes an ultimate finding of fact. *Dep't of Higher Educ. v. Singh,* 939 P.2d 491, 495 (Colo.App. 1997). As noted above, the Personnel Board may substitute its own judgment for the ALJ's decision with respect to an ultimate conclusion of fact as long as the Board's finding has a reasonable basis in the law. *Lawley v. Dep't of Higher Educ., supra,* 36 P.3d at 1252.

Rice contends that the Civil Service Amendment and the rule established in *Bardsley v. Colorado Department of Public Safety,* 870 P.2d 641 (Colo.App.1994), require the relief ordered by the ALJ. We agree that the ALJ's order regarding Rice should be reinstated.

A division of this court in *Bardsley* held that a certified position may not be abolished and the incumbent employee terminated if a new position is created with substantially the same duties as the old position and is filled by another employee. *See also People ex rel. Kelly v. Milliken,* 74 Colo. 456, 223 P. 40 (1923).

■ The Civil Service Amendment operates in conjunction with the State Personnel System Act, which was enacted to implement the constitutional provisions. State agency "reorganizations" are unconstitutional when state employees are terminated without being provided the option of remaining within the state personnel system. *Dep't of Human Servs. v. May, supra,* 1 P.3d at 166.

Layoffs may result from reorganization that represents a change in the fundamental structure, positions, or functions accountable to one or more appointing authorities. DOP Reg. No. 7–8.

Rice asserted before the ALJ that his rights were violated by AHEC's failure to transfer him to the new position in AHEC because the position required substantially the same qualifications and involved the same responsibilities. The ALJ found that the administrative transfer of the Media Center from UCD to AHEC was not the result of a "reorganization." According to the ALJ, there was no fundamental change to the Media Center's structure, positions, or functions. The Media Center continued to provide the same services after transfer of administrative control. The overall structure was modified only by a reduction in the number of positions, and the positions themselves continued to be substantially similar. Further, the ALJ found that UCD retained title to the Media Center equipment.

The record supports the ALJ's findings. It reflects that Rice applied for two positions at the AHEC Media Center, Media Specialist I and Telecommunications/Electronic Specialist II. He was not interviewed for either position. However, two other employees were offered and accepted the two Telecommunications/Electronic Specialist II positions at AHEC. Each of them had approximately two years of seniority in his classification, while Rice had over three years in the same classification.

UCD's human resources manager told Rice that he did not have any retention rights within UCD, and he did not sign any notice of intent to exercise his retention rights. However, under the Personnel Board rules, Rice's retention rights had to be exercised within his principal department. Thus, Rice would have had to retain his position within UCD. Because UCD no longer had either of the specialist positions, Rice could not exercise his retention rights, and any effort to retain those rights would have been futile. *See Horrell v. Dep't of Admin.,* 861 P.2d 1194 (Colo.1993) (a plaintiff need not exhaust administrative remedies when administrative relief is inadequate or futile).

The ALJ found that Rice was not chosen for the Telecommunications/Electronic Specialist II position because, while he could install AMX software, he could not write the code for that software. However, this skill was not included in the transfer notice as either a duty or a minimum requirement.

The ALJ also found that Rice and Wells, "after learning of the action implicating their tenure rights, had to affirmatively give notice to [AHEC] that they wanted to protect their tenure rights," and "Rice did this by applying for an AHEC position." Thus, the ALJ ordered AHEC to appoint Rice to a Telecommunications/Electronic Specialist II position and pay him back pay and benefits, with an offset for any unemployment compensation or other type of compensation received, from April 15, 2002 to the date of reinstatement.

We conclude the findings of the ALJ are supported by the law and the evidence.

AHEC nevertheless argues that it used "reasonable business judgment" in offering the Specialist II positions to two other certified state employees who had the same rights in the state personnel system as Rice. AHEC attempts to distinguish *Bardsley v. Colorado Department of Public Safety, supra,* and *People ex rel. Kelly v. Milliken, supra,* upon which Rice relies. We are not persuaded.

In *Milliken,* the supreme court held that the General Assembly had the power to abolish the office of motor vehicle inspector, but could not avoid the constitution by then creating a new office with substantially the same duties, to which new officers would be appointed. Thus, the original inspectors were entitled to the appointments.

In *Bardsley,* the state eliminated an agency division in response to budgetary pressures and transferred the division's responsibilities to another department within state government. All the classified employees were terminated, and although some employees were eventually hired back by the new agency, those rehired lost some benefits and status in the process. A division of this court held that to the extent any of the new positions substantially duplicated the old positions, the affected former employees were entitled to be transferred to the new positions without any loss of their previously vested benefits.

AHEC argues that the number of positions in the AHEC Media Center was reduced for lack of money and that this is a legally permitted reason under § 24–50–124(1). Thus, it contends that it did not attempt to replace the employees with "new" employees as was the case in *Milliken.* Further, AHEC notes that, under *Bardsley,* when functions are transferred from one agency to another, the employees retain some right to be considered for transfer; however, the division in *Bardsley* did not address which of the employees who possess the similar qualifications and perform the similar duties should be transferred when the number of positions is reduced.

The Personnel Board rules, *Milliken,* and *Bardsley* apply when certified employees are separated from state service. Although the department may consider other factors in addition to seniority, the record here reflects that neither seniority nor performance was considered by AHEC as required under DOP Reg. No. 7–4.

Finally, AHEC contends that *Department of Human Services v. May, supra,* demonstrates that state agencies have flexibility to meet the changing demands of their environment and their strategic and financial goals and a state agency's legitimate and reasonable business decisions should be upheld, as long as they do not conflict with state statutes or rules. According to AHEC, an employee's qualifications for the job at issue are

more important than the employee's seniority. However, in *May,* no classified employees were involuntarily separated from their positions or forced out of the civil service system.

Because the evidence supports the ALJ's finding that AHEC's actions with regard to Rice were arbitrary and capricious, that finding is binding on review. We further conclude that the Personnel Board's conclusion has no reasonable basis in the law. Consequently, its order with respect to Rice must be reversed.

## IV. Wells

Wells contends that he was entitled to one of the AHEC positions because his position as a UCD Media Specialist I was abolished, two substantially similar Media Specialist I positions existed at the AHEC Media Center, he properly exercised his retention rights, and he had more seniority than the employees retained by AHEC. We disagree.

As noted above, a certified employee has retention rights within the principal department. Transfer, however, is an appointment of a qualified employee to a different position within the same class. DOP Reg. No. 4–5. An employee *or* an appointing authority may initiate a transfer. DOP Reg. No. 4–5.

Here, the ALJ determined, and the Board agreed, that by failing to apply for an AHEC position, Wells did not provide notice of his intent to protect his tenure right, and AHEC did not violate his rights. We agree.

Wells filed a notice regarding his retention rights. However, as noted above, his retention rights applied to employment within UCD, not AHEC. Thus, he could not have remained within the state personnel system under UCD because, after the Media Center was transferred to AHEC, no jobs within his classification remained at UCD.

Furthermore, Wells acknowledged that on February 28 he received information that he could apply for a transfer position and that he chose not to apply for a position with AHEC. He also acknowledged that on March 8 he could have filed an appeal and an appli-

cation with AHEC. He testified that he did not apply for a transfer position because he did not want to jeopardize his retention or other rights, there was less employee satisfaction with AHEC, and he questioned whether he could trust AHEC. He also testified that the UCD Media Center "was meeting the clients' needs, and there was some skepticism as to whether ... AHEC ... could function as well as UCD did with the Media Center." Thus, as AHEC argues, by failing to apply for a transfer, Wells is precluded from challenging AHEC's hiring decisions, and he waived any right to ask the Personnel Board to order AHEC to give him a job.

We note that no case law or rule requires that an employee affirmatively initiate the transfer, and AHEC provides no legal authority that creates an affirmative duty to submit an application to retain a classified position. The only affirmative duty in the Personnel Board rules appears to apply to exercise of retention rights, DOP Reg. No. 7–13, and Wells requested retention rights. Nevertheless, Wells's efforts to secure a position with AHEC came too late. Not only was Wells provided the opportunity to apply for a transfer, he rejected that opportunity and filed an appeal against UCD seeking only reinstatement to his former position or, in the alternative, employment with UCD.

Because the evidence in the record as a whole supports the agency's finding, we are bound by the decision. Thus, AHEC's actions as to Wells were not arbitrary, capricious, or contrary to rule or law.

Accordingly, the Personnel Board's order is affirmed as to Wells. The order is reversed as to Rice, and the case is remanded with directions to reinstate the ALJ's order regarding Rice.

Judge HAWTHORNE and Judge HUME ** concur.

---

** Sitting by assignment of the Chief Justice under